[Civ. No. 33606. Second Dist., Div. Five. June 23, 1970.]

MONICA THEATER et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE BEVERLY HILLS
JUDICIAL DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

2

## Counsel

Stanley Fleishman for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert Lederman, Deputy District Attorneys, for Real Party in Interest and Respondent.

## Opinion

**REPPY, J.**—At the outset we point out that this opinion deals strictly with a misdemeanor violation (Pen. Code, § 311.2—exhibiting obscene material) and with a judicial inquiry into grounds supportive of a warrant under which an allegedly obscene motion picture film was seized. A pretrial on-the-merits determination as to whether the subject material is or is not legally obscene is not involved.

On November 13, 1967, after a citizen had made a complaint to the police concerning allegedly obscene photographs in an exterior showcase advertising the film, "Motel Confidential," being shown at the Monica Theater in West Hollywood, Officer Serio examined the photographs and a poster (hereinafter referred to collectively as the photographs) and viewed a performance of the film. Shortly thereafter Deputy District Attorney Hecht saw a showing of the picture. Over the next few days Officer Serio, with the assistance of Deputy District Attorney Hecht, prepared and executed an affidavit for a search and seizure warrant. On November 22, 1967, the affidavit was submitted to a judge of the municipal court in his capacity as a magistrate. The affidavit gave information concerning Officer Serio's experience as a vice officer, indicated his familiarity with the wording of Penal Code section 311 and with decisions of the United States and California[1] Supreme Courts on the subject of obscenity, gave a word depiction of the various episodes of the film in considerable detail, both

---

[1]Reference is made to *Flack* v. *Municipal Court,* 66 Cal.2d 981 [59 Cal.Rptr. 872, 429 P.2d 192].) Seltzer asserts that this aspect of foundation for Officer Serio's opinion as given in his affidavit and testimony is deficient because at the hearing Officer Serio said that he disagreed with the decisions of the United States and California Supreme Courts. Although he did so express himself, he made it clear that in official acts he followed them. After Officer Serio had been questioned by Seltzer's attorney, the deputy district attorney asked this question and received this answer.

"Q. Mr. Serio, when you make application for a . . . search warrant, do you draw a distinction between your own personal opinions and the legal standards that you have become acquainted with . . . ?

"A. I definitely draw a distinction. I don't include my own personal opinion of [*sic*—in] it. I base it solely on what the courts have affirmed."

as to sight and sound, expressed the opinion of Officer Serio that the film was obscene, advised that Deputy District Attorney Hecht concurred in this opinion, and made known to the magistrate that the opportunity existed for him to view the film (presumably by attending a showing of the picture at the theatre which had one or two more nights to run). It was also indicated that a notice to appear was going to be issued which would be served upon Frank N. Seltzer, the president of Monica Theater, a corporation which operated the theater and exhibited the shows, at the time the film would be seized and he would be arrested for violation of section 311.2 of the Penal Code (knowingly exhibiting or having in possession with intent to exhibit, any obscene matter—a misdemeanor), in order to bring him before the municipal court at a set date and time.

The magistrate chose not to view the film. On the same day it was presented, upon scrutinizing the affidavit, the magistrate issued the seizure warrant. Officer Serio then went to the theater, seized the photographs and one copy of the film, arrested Seltzer, and served on him the notice to appear, thus instituting a criminal action (M-1927) in which Seltzer was the defendant.[2]

Seltzer then filed in the criminal proceedings a document which he denominated "Traverse of Grounds of Issuance of Search Warrant and Motion to Suppress Evidence and for the Restoration of Properties Seized Under Search Warrant," supported by a declaration made by Stanley Fleischman, Seltzer's attorney, in which he specified a number of motion pictures, a magazine, a drawing and other materials alleged by authorities to have been obscene but found not to have been obscene in court decisions and expressed his opinion that "Motel Confidential" was not obscene but was protected free speech, and also supported by a declaration of Seltzer in which he identified himself as the party served with the notice to appear, stated that he controverted the grounds on which the warrant was issued, and made known his belief that the film and photographs were not obscene but were protected free speech.

---

[2]Penal Code section 853.6 (as it read prior to the 1969 amendment) provided in part as follows: "In any case in which a person is arrested for . . . a misdemeanor . . . the arresting officer . . . shall prepare in duplicate a written notice to appear in court, containing the . . . offense charged, and the time and place . . . [to] appear
. . . .
" . . . . . . . . . . . . .
"The officer shall deliver one copy . . . to the arrested person, . . . [who] must give his written promise so to appear . . . by signing the duplicate. . . .
"The officer shall . . . file the duplicate notice with the magistrate . . . ."
Penal Code section 853.9 provides in part:
"If . . . the defendant . . . pleads other than 'guilty' . . . a complaint shall be filed . . . except that a defendant may . . . in writing . . . waive the filing of a . . . complaint and elect that the prosecution may proceed upon a written notice to appear."

Commencing on December 5, 1967, a "probable cause" hearing was conducted by the magistrate issuing the warrant. At it, the Serio affidavit and the Fleischman and Seltzer declarations were received in evidence, Officer Serio and Deputy District Attorney Hecht, were cross-examined, and the film "Motel Confidential" and the photographs together with copies of various other magazines, photographs and portrayals, were received in evidence. The magistrate viewed the film "Motel Confidential" and various comparison films, made available by Seltzer, several of which had been adjudged not obscene in court proceedings, but one of which, unadjudicated, was suggested by Seltzer to be obscene.

Although defendant's attorney asked the court to view the comparison films, and the court did so, he never offered them,[3] and the court never received them, as evidence.

At the probable cause hearing, Seltzer contended: (1) that the warrant was invalidly issued because the magistrate had not conducted an adversary proceeding concerning its alleged obscenity, or had not, at least, viewed the film before issuing the warrant; (2) that the issuance of the search warrant was invalid in that the affidavit seeking it, on its face, was insufficient, in that the word depiction of the film was too cursory and the affidavit, in substance, became only the conclusional opinion of Officer Serio, and in that the officer had failed to establish his expertise in the field and had failed to evaluate the film under contemporary standards and customary limits of candor; (3) that the cross-examination of Officer Serio and the presentation of the film and the comparison film had demonstrated that Officer Serio had not accurately depicted the film in his affidavit and had been wrong in his opinion as to its obscenity, and that, rather the film "Motel Confidential" was of such make-up that it did not provide probable cause for the issuance of the warrant. The magistrate found against Seltzer as to each of his contentions and held the warrant had been issued properly.

The date for the arraignment of Seltzer was set so that he could, and he did on January 4, 1968, file in the superior court a petition for writ of mandate.[4] The petition called attention to the circumstance that the magistrate had not viewed the film or the photographs or conducted a prior adversary proceeding concerning their alleged obscenity before issuing the warrant, and by attachment and reference it incorporated copies of Officer Serio's supporting affidavit, Fleischman's and Seltzer's opposing declaration and the reporter's transcript of the hearing before the magistrate. It alleged

---

[3]The prosecution, of course, did not offer them.

[4]Monica Theater, a corporation, also was a petitioner but it had no standing because it had not been a movant in the probable cause hearing before the magistrate. We, therefore, give no consideration to the corporation's purported appeal.

that the film and the photographs were not obscene but were protected free speech and that the issuance of the warrant solely in reliance upon the affidavit of Officer Serio and the refusal of the magistrate to order the suppression and restoration of the film and photographs after the hearing were (1) prior restraints upon freedom of speech in violation of the constitutional provisions relating to that subject matter, (2) denials of due process, and (3) contrary to the seizure provisions of the constitutions.

The superior court issued an alternative writ, and the petition was heard. On March 19, 1968, the superior court made its findings of fact, conclusions of law and judgment. The court found that the chronology of events was as above outlined, that Serio's affidavit contained a detailed summary of the contents of the film which the magistrate relied upon in issuing the warrant, that at the hearing the magistrate viewed the film, the photographs and the comparison films, that the film and photographs were probably obscene, and that the issuance of the warrant and the denial of suppression and restoration of the materials did not constitute either a prior restraint on communications, a denial of due process, or a violation of constitutional seizure provisions. The trial court noted that it had read the Serio affidavit and the entire transcript of the hearing before the magistrate. It then concluded that the Serio affidavit was sufficient to establish probable cause to believe that the film and the photographs were obscene material, that they were properly seized, that the magistrate was correct in his ruling that Seltzer was not entitled to restoration of the items, and that the alternative writ should be discharged and the peremptory writ denied. It issued its judgment accordingly.

Seltzer then appealed from this judgment of the superior court.

CONTENTIONS ON APPEAL

The contentions on appeal are as follows:

1. The issuance of the warrant for and the seizure of the motion picture film and the photographs without a prewarrant adversary proceeding or ex parte view of the material violated the free speech, due process, and seizure provisions of the Constitutions of the United States and California.

2. The issuance of the warrant and the seizure of the film and photographs, solely in reliance upon the affidavit of Officer Serio, which was allegedly conclusional and formulated under unconstitutional standards, was violative of all of said constitutional provisions.

3. The failure of the People, at the probable cause hearing before the magistrate, to adduce any evidence that the film goes beyond customary limits of candor in the description of sex matters, appeals to the prurient

interests of the average person, and is utterly without redeeming social importance, renders the continued holding of the film violative of said constitutional provisions.[5]

4. The trial court erred in the mandate proceedings in failing to make findings on the points covered by the request of Seltzer made pursuant to Code of Civil Procedure, section 632.

5. The warrant, seizure, hearing and review procedures pursued in the instant case did not provide a speedy determination of the question of whether the film and photographs were protected by or excepted from free speech provisions of the Constitution.

6. The definition of obscenity contained in Penal Code section 311 was given a vague and overly broad construction in authorizing the seizure and holding of the film and photographs in question was vague.

## DISCUSSION

Despite contention number 5 (no speedy on-the-merits determination of obscenity), the record and Seltzer's brief indicate that only the factor of *probable cause* for the issuance of the seizure warrant was involved in the hearing before the magistrate and in the review by the superior court under the alternative writ of mandate.[6] Thus, we are not concerned with the perplexing problem of when and by what means an on-the-merits judicial consideration of the character of the involved material (protected speech because not obscene, or unprotected speech because obscene) should be afforded prior to a trial of a defendant (presumably by jury) for exhibiting

---

[5]To be evaluated under statewide contemporary standards (*In re Giannini,* 69 Cal.2d 563, 577, et seq. [72 Cal.Rptr. 655, 446 P.2d 535].)

[6]In his opening brief on appeal, Seltzer says, "Appellants of course are cognizant that the question in the case at bar is one of probable cause . . . ," and he makes reference to a superior court decision involving probable cause for a grand jury to indict.

The following is of interest as to probable cause: Section 1527, Penal Code, states that the affidavit submitted in support of a request for a seizure warrant "must set forth the facts tending to establish . . . probable cause for believing that . . . [the ground of the application] exist[s]."

Section 1525, Penal Code, provides: "A search warrant cannot be issued but upon probable cause . . . [shown] by affidavit . . . particularly describing the . . . [items sought] and the place to be searched."

The ground for the issuing of the warrant in cases similar to the instant one is as follows: "When the . . . [item is] in the possession of any person with the intent to use it as a means of committing a public offense . . . ." (Pen. Code, § 1524, subd. 3.)

Probable cause for believing that the ground for the issuance of the warrant exists is said to be present if a person of ordinary intelligence and receptivity ("ordinary prudence" is the term frequently used, but we feel the words here employed are more apropos) would be led to conscientiously entertain an honest and strong suspicion

obscene material. (See *Zeitlin* v. *Arnebergh,* 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707] and *Aday* v. *Municipal Court,* 210 Cal.App.2d 229, 249 [26 Cal.Rptr. 576].)[7]

In connection with the limited issue defined above, we are initially concerned about the statutory or decisional basis for the proceeding before the magistrate.[8]

Subsection (a) of section 1538.5 provides that: "A defendant may move for the return of property or to suppress as evidence any . . . thing obtained as a result of a . . . seizure on the ground that: . . . [t]he . . . seizure . . . was unreasonable because . . . there was not probable cause for the issuance of the warrant . . . or . . . there was any . . . violation of . . . constitutional standards." Subsection (c) provides that, "Whenever a . . . seizure motion is made in the municipal . . . court . . . the . . . magistrate shall receive evidence on any issue of fact necessary to determine the motion."

This part of section 1538.5 seems to contemplate a full hearing on the question of the lack of probable cause for the issuance of a seizure warrant for reasons of free speech violations, where the movant is a defendant and the material involved is intended to be used as evidence in a criminal trial. The concept of the Appellate Department of the Superior Court for Los Angeles County, which appears in *People* v. *Cimber,* 271 Cal.App.2d

---

that the ground exists,* that is, with cases of the instant type, that the film is in the possession of a particular person with the intent to use it as a means of committing the public offense of knowingly exhibiting or possessing with intent to exhibit any film or photograph that to the average person, applying contemporary standards, has a predominant appeal, taken as a whole, to a shameful interest in nudity and sex and that in making such appeal goes substantially beyond customary limits of candor in representation and is utterly without redeeming social importance. (See Pen. Code, § 311.)

[7]It is noted that the Legislature appears to take cognizance of the decisional rule that a pretrial on-the-merits consideration of the character of the involved material (obscene or not obscene) is available to a defendant. (*Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d 901; *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229.) Subparagraph (n) thereof states that nothing contained in section 1538.5 "shall prohibit a person making a motion, otherwise permitted by law, to return property [subparagraph (n) does not mention suppression of evidence], brought on the ground that the property obtained is protected by the free speech . . . provisions of the . . . constitutions." and that "[n]othing in this section shall be construed as altering . . . the law relating to the burden of proof regarding . . . seizure . . . ." Section 1539 (as enacted in 1967) states that, "[i]f . . . a motion to return property be made . . . by a defendant on grounds not covered by section 1538.5 [perhaps in light of subsection (n) the constitutional protection of free speech is a ground not covered] . . . the . . . magistrate must proceed to take testimony in relation thereto. . . ."

[8]The supporting authority specified by Seltzer was Penal Code section 1539.

---

*(Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 144, p. 137.) Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. (*Spinelli* v. *United States,* 393 U.S. 410, 419 [21 L.Ed.2d 637, 645, 89 S.Ct. 584].)

Supp. 867, 870 [76 Cal.Rptr. 382], and *People* v. *Bonanza Printing Co.,* 271 Cal.App.2d Supp. 871, 873 [76 Cal.Rptr. 379], that a section 1538.5 proceeding relates strictly to an examination of the affidavit on its face and that section 1539 provides the vehicle for a broader testimonial inquiry does not appear to be accurate.[9] It has been corrected in two unpublished opinions, *People* v. *Stuart,* No. Cr. A. 8514 and *Stuart* v. *Davis,* Superior Court No. 968656.

Subdivision (g) of section 1538.5 provides that, "If the property . . . relates to a misdemeanor complaint, the motion shall be made in the municipal . . . court before trial and heard prior to trial at a special hearing relating to the validity of the . . . seizure." However, subsection (b) provides that, "When consistent with the procedures set forth in this section . . . , the motion should first be heard by the magistrate who issued the . . . warrant . . . ." Subdivision (m) of section 1538.5 provides that, "The proceedings provided for in this section, Section 995, Section 1238, and Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a . . . seizure where the person making the motion . . . is a defendant in a criminal case and the property . . . will be offered as evidence against him."

■ Since Seltzer was a defendant in the criminal proceedings, since it is obvious that the film and photographs were intended to be offered as evidence against him in the trial of the charge of violation of section 311.2 and since the contention was that the seizure of the film and photographs with the warrant was unreasonable because there was no probable cause for the issuance of the warrant or there was a violation of federal or state constitutional standards (the items were so clearly not obscene that there

---

[9]That may have been the case under the wording of sections 1538 and 1539 before they were amended in 1967. Section 1538 then simply provided for the delivery of a copy of an inventory to the person from whose possession property was taken (to the interested parties) and section 1539 provided that: "If the grounds on which the warrant was issued be controverted, . . . [the magistrate] must proceed to take testimony in relation thereto . . . ."

The 1967 amendment was effective at the time of the proceedings involved in the instant case. Pertinent to the circumstances under consideration, section 1539, as amended in 1967, provides that "if the grounds on which the warrant was issued be controverted *and a motion to return property be made* . . . by a defendant on grounds not covered by Section 1538.5 . . . the . . . magistrate must proceed to take testimony in relation thereto . . . ." This would come into play only if the motion were on a ground not covered by section 1538.5. If in California a pretrial motion for an on-the-merits adjudication with respect to obscenity does lie, and such a motion is made, it would be on a ground not covered by section 1538.5. The Legislature intimates its recognition that such a procedure may lie. Section 1538.5, subdivision (n), states in part, "Nothing contained in this section shall prohibit a person from making a motion, otherwise permitted by law, to return property, brought on the ground that the property obtained is protected by the free speech and press provisions of the federal and state constitutions."

was no room for a determination by the magistrate that they probably were obscene), a motion under section 1538.5 was the exclusive remedy of Seltzer for the return or suppression as evidence of the property, and at the 1538.5 hearing the magistrate was entitled to receive evidence on any issue of fact necessary to determine the motion. There is no limitation as to the type of evidence. It is not restricted to the affidavits submitted in support of or in opposition to the request for the warrant. It could include testimony of witnesses, including the cross-examination of the presenting officer, the questioned materials themselves and other documentary evidence.

Thus, we conclude that the magistrate conducted a 1538.5 proceeding. Pending the filing of our opinion, the third appellate district filed *Childress* v. *Municipal Court* (1970) 8 Cal.App.3d 611 [87 Cal.Rptr. 383]. There may yet be a hearing before the Supreme Court, but some comment is indicated. We note that one point of the petition for writ of prohibition was that the declaration filed by the prosecution to support the seizure warrant was insufficient on its face; that another point was that the film was not obscene on the merits; that Childress had made no code section designation for her motion; and that the appellate court felt that both issues were properly before the municipal court under subdivision (n) of section 1538.5, although the Attorney General suggested that the probable cause aspect should have been under subdivision (a) (2), presumably further categorized under (iii) and (v). Apparently it was just a matter of applying one or the other subdivision to Childress' petition without penalizing her for her lack of designation. Our opinion suggests that the subsections referred to by the Attorney General were the proper ones for the probable cause issue.

Further, we note that *Childress* impliedly shares our view that existing state procedures, without a prewarrant adversary hearing, including appeal of 1538.5 rulings by municipal courts, as said by its authors, "provide ample constitutional protection . . . ."

Our next concern is what was the proper review remedy open to Seltzer. Subsection (j) of section 1538.5 provides in part as follows: "If the property . . . seized relates solely to a misdemeanor complaint, and the defendant made a motion for the return of property or the suppression of evidence in the municipal court . . . prior to trial, both the people and defendant shall have the right to appeal any decision of that court relating to that motion of the superior court of the county in which such inferior court is located, in accordance with the California Rules of Court . . . ." This is to be contrasted with the provisions of subsections (i) and (o), relating to felony offenses, wherein it is provided that after a special hearing is held in the superior court any pretrial review desired shall be by means of a writ of mandate or prohibition (directed, of course, to the Court of Ap-

peal). No doubt the variance in review remedies is based upon the assumption that the time schedule leading to a decision (by way of appeal) in the appellate department of a superior court is more rapid than that in the Court of Appeal (where mandate and prohibition provide the speedier means to a prompt decision) and upon a desire that the review in misdemeanor cases at the superior court level be in the appellate department of that court.[10]

Probably on the misconception that the proceeding before the magistrate was under section 1539 rather than section 1538.5,[11] and possibly because he felt it would provide an even speedier review, Seltzer did not appeal the magistrate's ruling made at the probable cause hearing but, instead, petitioned the superior court for a writ of mandate. It is questionable whether this should have been permitted. If relief by motion is sought, and it is denied by an appealable order, the remedy by appeal is normally adequate. 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 50, p. 2533; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 53, pp. 2538-2539, citing *Andrews* v. *Police Court,* 21 Cal.2d 479 [133 P.2d 398, 145 A.L.R. 1042].) However, sometimes, even when appeal is the proper remedy, mandamus is authorized because all the parties have acquiesced. (3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 51, p. 2535, citing cases, and 1967 Supplement, also citing cases.) In the instant case it would appear that the People did acquiesce and that the superior court accepted and acted upon the petition in that light. However, we do not endorse this avenue of review.[12] We note that appellate preference is available under a proper showing. We do not absolutely rule out the use of the writ method. Under a strong showing of need, including the circumstance that a duplicate film is unavailable, a defendant unsuccessful in a section 1538.5 hearing might be granted an alternative writ. In the instant matter since the superior court did entertain the mandamus proceeding and points of law are principally involved, we have decided to let the mandate proceeding stand as such and to review those issues on the merits which we consider to be properly before us.

We turn to a consideration of Seltzer's contentions.

■ With respect to Seltzer's first contention (required pre-warrant

[10]The appellate department of the superior court (a three-judge court) and a writ judge of that court hold different jurisdictional powers. (See *People* v. *Allenthorp,* 64 Cal.2d 679 [51 Cal.Rptr. 244, 414 P.2d 372] for one example.)

[11]The section had only recently been enacted.

[12]One forceful reason for not doing so is that there should be an end to reviews. A defendant ordinarily should not get a fourth judicial consideration by being able to appeal to the Court of Appeal from an adverse decision on an extraordinary writ proceeding before a superior court judge. We do not feel that subdivision (n) of section 1538.5 authorizes writ review.

adversary proceeding or ex parte view of film), we find no decisive pronouncements in the decisions of the United States Supreme Court that for *probable cause purposes* a magistrate, asked to issue a seizure warrant for a motion picture film, must, before issuing a warrant, (1) cause to be initiated and hold an adversary proceeding (which probably would involve receipt of evidence on contemporary standards and customary limits of candor and a view of the involved film), or (2) at least view the film ex parte. (See *Lee Art Theatre* v. *Virginia* (1968) 392 U.S. 636, 637 [20 L.Ed.2d 1313, 1315, 88 S.Ct. 2103]; *A Quantity of Books* v. *Kansas* (1964) 378 U.S. 205 [12 L.Ed.2d 809, 84 S.Ct. 1823]; *Marcus* v. *Property Search Warrant* (1961) 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708].) Two California cases bear on the point. The first is *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981. It alluded to the matter in a footnote[13] and left it open. We feel that by its use of the word "feasible" in the much publicized footnote the Supreme Court meant that it might be found that carrying out such an advance adversary proceeding or taking such an ex parte view of the film would be so generally feasible that it would be warranted in setting up a decisional rule that one or the other procedure be a prerequisite to the issuance of a seizure warrant. The second case is *People* v. *de Renzy,* *275 Cal.App.2d 380 [79 Cal.Rptr. 777]. It stands for the proposition that such pre-warrant actions are not a prerequisite to the issuance of a warrant directed for the seizure of an allegedly obscene motion picture film. We agree with the final conclusion expressed in *De Renzy,* but chiefly because it is our feeling that an adversary proceeding and view of the film are promptly and readily obtainable after the issuance of a warrant through the medium of a section 1538.5 motion.

It is suggested that section 1538.5 to be valid should set some time limit within which the magistrate or municipal court should commence, conclude and rule upon a special hearing, if moved for by a defendant, and within which a review should be made and determined. *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734] does recommend the New York system (p. 60 [13 L.Ed.2d at pp. 655-656]) which specifies certain time limits for judicial action; but at the same time the United States Supreme Court says (p. 61 [13 L.Ed.2d at p. 656]): "We do not mean to lay down rigid time limits or procedures. . . ." *Freedman* involved an initial evaluation by a biased administrative censor which

---

[13]Footnote 13 at page 993 reads as follows: "No warrant being involved here, we have none to evaluate and thus do not reach the problem of determining the necessary content of a warrant. Nor do we here ascertain whether it is feasible for the magistrate to examine the allegedly offending film or hold an adversary proceeding prior to issuing a warrant, as suggested by four justices in *A Quantity of Books* v. *Kansas* (1964) *supra,* 378 U.S. 205."

*Hearing by Supreme Court denied September 24, 1969.

cast the burden on the film exhibitor, if the censor's action was adverse, to seek adversary judicial consideration of a type which, apparently under court rules, did not insure prompt action. The Supreme Court took note that in the only reported Maryland case the initial determination took four months and the final vindication on appellate review six months (p. 55 [13 L.Ed.2d at p. 653]). Under the California warrant procedure, the initial consideration as to whether there might be a temporary prior restraint through seizure under a warrant, although not adversary, is by a judge whose duty it is to be impartial and cognizant of and sensitive to the appellate rulings on obscenity and First Amendment rights.[14] In California, by means of a section 1538.5 motion, a very prompt adversary judicial proceeding can be secured. The section sets no time lapse for notice or other purpose. Conceivably the review of the initial nonadversary judicial evaluation or a de novo consideration can be under way within 24 hours, or less, of the seizure.[15] The section does not specify a time within which the magistrate must rule, but he will be aware of the prior restraint doctrine particularly applicable to films currently being shown and of the need to rule promptly in order to be in harmony therewith and not to jeopardize his ruling.

*Freedman* says that a valid process "must . . . assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license [from the censor]." (P. 59 [13 L.Ed.2d at p. 655].)[16] In California, the defendant in a misdemeanor setting has three levels of judicial consideration. The third, and what ought to be the final one, is his appeal to the appellate department of the superior court. It is felt that the time within which this can be processed, particularly if preference is allowed, considering that the unsuccessful defendant has had one adversary judicial proceeding already, is adequate under the elastic standards promulgated by the United States Supreme Court. It is also true that the possible need for a prewarrant adversary proceeding or ex parte view is not as pressing where only one copy of an allegedly obscene film is seized which apparently was the circumstance in this case.[17]

---

[14]In holding the Maryland censorship board process unconstitutional, the United States Supreme Court stressed that the initial decision by the board was without judicial participation (pp. 54-55 [13 L.Ed.2d at p. 652]) and lacked safeguards for confining the censor's action to judicially determined constitutional limits (p. 57 [13 L.Ed.2d at p. 653]).

[15]We note that in the instant case the warrant was issued and the seizure made on November 22, and that the adversary probable cause hearing commenced on December 5, a period of nine court days.

[16]In a California warrant case, it would be a denial of a motion for return of property after a probable cause hearing.

[17]In any event, the evidence suggests that the showing was due to close in one or two nights. No evidence was introduced that Seltzer could not have obtained another copy of the film if he wished to extend the run of the film at his theater.

If, indeed, in a given case, a prewarrant viewing or hearing would have inclined the magistrate not to issue a warrant, the same decision at the close of a section 1538.5 hearing would eventuate in restoration of the film, creating a minimal prior restraint[18] (which would be even more minimal if a duplicate film were obtained during the interval between the seizure and the decision on the section 1538.5 motion).

In a supplemental brief filed just prior to argument, defendant cited three recent federal cases, one from the Fourth Circuit and two from the Second Circuit, which stand for the proposition that there must be an adversary hearing on the question of obscenity in motion picture film cases before a warrant for seizure can be issued. Two of them are cases where a seizure was made under a warrant issued by a magistrate who had viewed the film and where the possessor, in an equitable proceeding, had sought and secured an injunction requiring the return of the film. In each case, the injunctive order was made conditional on the possessor supplying a copy of the subject film for the purposes of the criminal trial. In the first of the federal cases referred to, *Tyrone, Inc.* v. *Wilkinson* (4th Cir. 1959) 410 F.2d 639, certiorari denied (1969) 396 U.S. 985 [24 L.Ed.2d 449, 90 S.Ct. 478], the means for providing the hearing which could result in permission for seizure, if the character of the film allowed it, were discussed. Mentioned were a preliminary injunction-type hearing or an order to show cause why the film should not be seized. Although it was stressed that the proceeding would have to be one which would "focus searchingly on the question of obscenity," it was made clear that it would not be necessary for there "to be a fully matured action." This suggests that the standard of inquiry would be that of "probable cause" which is the premise for the issuance of a warrant in California. In the second case, *Bethview Amusement Corp.* v. *Cahn* (2d Cir. 1969) 416 F.2d 410, certiorari denied (1970) 397 U.S. 920 [25

---

[18]It is noted that under section 1538.5, subparagraph (e), an order for release cannot be effective until the People's appeal time (10 days under rule 182, California Rules of Court) expires or until after the conclusion of further unsuccessful proceedings if the People appeal. However, in the event of the latter, upon a proper showing including the fact that the defendant exhibitor cannot secure a duplicate print, the defendant might well be granted an alternative writ on the issue under appeal or given appellate preference. The time lapse would present no problem if the defendant promptly got a duplicate film. He could commence showing it immediately. Subparagraph (e) reads, in part, as follows: "If the motion [to secure return of property or to suppress it as evidence] is granted at a special hearing [subparagraph (g) where misdemeanor is involved], the property shall be returned upon order of the court only if, after conclusion of any further proceedings authorized by this section or Section 1238 or Section 1466, the property is not subject to lawful detention or if the time for initiating such proceeding has expired, whichever occurs last."

Subparagraph (e) refers only to further proceedings authorized by this section (1538.5) or sections 1238 or 1466. This does not contemplate an extraordinary writ proceeding. Thus, in saying such a writ proceeding may lie, it is in spite of section 1538.5 and to keep it valid as it relates to motion picture films.

L.Ed.2d 101, 90 S.Ct. 929], it was suggested that the government's legitimate concern that the requirement of a preliminary proceeding of such a nature would pose the threat of a possessor getting rid of the film could be met by an ex parte restraining order to the effect that the film shall not be disposed of.

The third case cited, *208 Cinema, Inc.* v. *Vergari,* an unreported Second Circuit court opinion, reverses a district court opinion, reported in 298 F.Supp. 1175, which upheld a warrant seizure as to which there was no pre-warrant adversary appraisal.

We are advised that in each of the three cases petitions for writ of certiorari to the United States Supreme Court were denied.

These noncontrolling decisions are not sufficiently persuasive to require a ruling that the present California system (untreated with in *Flack* v. *Municipal Court, supra,* and sanctioned in *People* v. *de Renzy, supra*) is unconstitutional.

California's section 1538.5 hearing is a procedural vehicle which allows for a very prompt adversary proceeding, and is one which "the censor" knows calls for him "to go to court." (See *Freedman* v. *Maryland, supra,* (1965) 380 U.S. 51, 59 [13 L.Ed.2d 649, 655].)

An even later decision, *Demich, Inc.* v. *John J. Ferdon* (9th Cir. 1970) 426 F.2d 643, decided by the United States Court of Appeals for the Ninth Circuit on May 13, 1970, follows these preceding federal counterparts in dealing with a film seizure case arising in California. (See also *Metzger* v. *Pearcy* (7th Cir. 1968) 393 F.2d 202.) However, the opinion makes no reference to the California statutory scheme for prompt judicial review of a previously issued search warrant (§ 1538.5). Thus, we find it not controlling (cf. *People* v. *Willard,* 238 Cal.App.2d 292, 305 [47 Cal.Rptr. 734]). Moreover, we agree fundamentally with the dissenting opinion therein. The restraint, before such a hearing, is imposed only briefly. This meets the test laid down in *United States* v. *37 Photographs,* 309 F.Supp. 36, a three-judge decision of the United States District Court, Central Division, California, cited by defendant in his supplemental brief. Moreover, we feel that one or more affidavits submitted to the magistrate in support of a request for a seizure warrant can be composed in a manner to focus searchingly on the question of obscenity. Detailed pictorial word descriptions of the continuity of the film plus the opinions of experts, whose qualifications are adequately given, can serve this purpose initially.[19] Obviously, the extent and intensity of the inquiry would be magnified at a section 1538.5 adversary proceeding.

---

[19]The material in the Serio affidavit in the instant case is not exactly overpowering,

It is suggested that a pre-warrant adversary proceeding is necessary in order that the magistrate may receive evidential information relating to the contemporary standards which the average person (somehow to be identified by the magistrate) would be deemed to apply in determining if the predominant appeal of the film is to a shameful interest in nudity and sex, and if the method of that appeal goes beyond the customary limits of candor in representation. Such information can be included in the affidavit offered in support of the request for a warrant. Moreover, we feel that at the probable cause level[20] a magistrate, certainly one serving in an area as exposed to the broad scope of the entertainment media as West Hollywod, would know by what standards the law requires allegedly obscene material to be gauged, would have some knowledge about contemporary standards and customary limits of candor, and would apply such knowledge when evaluating fact recitals in an affidavit. We also feel that for purposes of probable cause an adequate word depiction of the various episodes in a film, both as to sight and sound, can be set out so that the appropriate evaluation can be made.

■ Seltzer's second contention on appeal (inadequacy of the police affidavit on its face) is not properly before this court.

At the probable cause hearing, Seltzer, as a second ground of attack, did question the sufficiency of the affidavit for the seizure warrant on its face. Arguments pro and con were presented to the magistrate, and he was asked to make his ruling forthwith so that should it be in favor of Seltzer, the proceeding could terminate at that point, saving the court and the parties and their counsel the time which would be involved in an evidential hearing. The magistrate found that the affidavit was sufficient. Defendant might have decided to take his stand at this level and to seek a review of the ruling by the statutory remedy of appeal, or possibly by "certiorarified mandate." However, he did not do so. He chose to go into the evidential phase.

---

particularly with respect to the officer's expertise and knowledge of contemporary standards and limits of candor.

However there was embodied in the affidavit material which would support an inference by the magistrate that Officer Serio was familiar with contemporary standards and limits of candor, such as his year of specializing in obscenity investigations for the state, his allusion to "candid" depictions, and his reference to "the meaning of the . . . opinions of the United States Supreme Court."

Evidence in the record indicates that Officer Serio personally presented his affidavit for a warrant to the magistrate and that he was known to the magistrate prior to that time. Thus, the magistrate had the benefit of a visual observation of Officer Serio's attitude and demeanor when the affidavit was presented and of his familiarity with the officer's specialty.

It is sufficient for us to rule that the magistrate's conclusion as to the adequacy of the Serio affidavit was justified. If so supportable, his conclusion controls.

[20]*In re Giannini, supra,* 69 Cal.2d 563, deals with standards for an actual trial.

This was a calculated risk decision[21] because the evidence to be received at the probable cause hearing would become the basis of support for the validity of the warrant and the continued control of the film by the People. The view of the film itself by the magistrate would supersede the word picture of it presented in the affidavit. The information gained at the hearing concerning the qualifications and expertise of the officer and the deputy district attorney supportive of their opinions would supplant or supplement the material in the affidavit. The comparison films, which Seltzer ultimately presented to the magistrate, although at first reluctant to do so because of the recognized risk, augmented any contemporary standard concepts implict in the affidavit.[22] In each instance the hearing evidence could turn out to be more substantial from the People's standpoint than the material contained in the affidavit.

Thus, any review which the superior court was to make, and which this court might make of the worth of the material supportive of the warrant, would be one of all of the evidential material submitted to the magistrate at the probable cause hearing and not one solely of the facial language of the Serio affidavit. However, there would be judicial point to such a review only if this aspect of the probable cause hearing had been submitted to the superior court entertaining the mandate proceeding.

■ This leads to a consideration of Seltzer's third contention on appeal (failure of the People to introduce evidence on limits of candor, prurient appeal, and social unimportance). There are two reasons why his contention is unavailing. Firstly, he chose to submit comparison films, which bore on this issue. If they were of a nature which the magistrate considered favorable to the People, they had the advantage of this circumstance. Secondly, the appeal record is inadequate to disclose whether that issue indeed was put to the superior court. We do not have a reporter's transcript of the mandate proceedings or the minutes of the court. There are only the findings of fact and conclusions of law, and judgment. It is the obligation of the appellant to provide this court with an adequate record. (*Thompson* v. *Superior Court,* 262 Cal.App.2d 98, 104 [68 Cal.Rptr. 530].) Likewise, of course, it was the obligation of Seltzer, as the petitioner in the mandate proceeding, to bring before that court all of the evidential material essential for it to review and pass upon all points urged by him. The findings of fact intimate that the superior court did not view the film

---

[21]At the hearing the affidavits could be part of the evidence, if received for that purpose. They were in the instant case. However, the film itself certainly would be the superior evidence of its portrayal.

[22]There was the indication that Officer Serio was familiar with court adjudicated materials on a statewide basis and at least the intimation that his opinion was derived from such knowledge.

"Motel Confidential" or the comparison films. However, it is nowhere clear in the findings and conclusions that these films or photographs were made available. Although the film "Motel Confidential" was offered and received in evidence in the probable cause hearing, the comparison films were not; not even by reference. Therefore, the latter could not have been properly before the superior court absent a stipulation or the pursuit of an appropriate proceeding to make them part of the record which probably would have had to have been conducted before the magistrate. This being the posture of the record before us, we find no basis to warrant our review of the question of the sufficiency of the evidence to support the warrant (in particular whether the comparison films advantaged the People or Seltzer). Thus, we do not reach the somewhat provocative question of the extent to which evidence should be developed at a probable cause hearing on the factors of contemporary standards and customary limits of candor either as part of the knowledge of experts rendering opinions or as part of the background material for the court itself in its consideration of the film, or both.

■ Seltzer's fourth contention on appeal, which we now turn to, apparently is limited to his request for special findings made at the time proposed findings prepared by the People were under consideration. Seltzer also had filed objection to the proposed findings and conclusions and had submitted some proposed counterfindings and conclusions. The propriety of the rulings of the superior court as to the latter items does not seem to be now under attack. In any event, most of the points would be moot in light of the limited issue we consider to be properly subject to this review. One item deserves comment. Objection was made to a finding that the magistrate had determined that the photographs were obscene and to a conclusion that the magistrate was correct in ruling that Seltzer was not entitled to their restoration. There was no need to find how the magistrate ruled. The superior court presumably was making its own independent determination. It can be said that the reality of the superior court's action in this regard was the making of its own finding that the photographs probably were obscene (thus making the seizure of the warrant valid as to them). Actually, Officer Serio, in cross-examination conceded that the photographs were not obscene. The finding should have been that the photographs, although not obscene, were possessed by Seltzer with the intent to use them as a means to commit the offense of exhibiting obscene material (the film). They were the lure to obtain the audience for the exhibition. The point is so obvious that by this explanation it will be considered that the finding is so made.

Seltzer's proposed findings 1 through 8 dealt with the pre-warrant circumstances. It would have been appropriate for the superior court to

make such findings. However, as indicated, this facet does not appear to be part of Seltzer's point on appeal; and, in any event, their absence has not hampered our review of these issues. We have resolved them considering such findings as having been made.

Seltzer proposed a conclusion of law to the effect that it was violative of the constitutions for the superior court to uphold the magistrate without viewing the film, the photographs and the comparison films. Again this item appears not to be included in the contentions. Moreover, as we have pointed out, the record brought up to us is insufficient to permit of a determination as to whether a record adequate on the issue of the sufficiency of the probable cause evidence was made available to the superior court.

The special findings requested (the failure to make which is the true marrow of this contention) are these: (1) whether the film and photographs are constitutionally protected material; (2) whether they do not appeal to prurient interests; (3) whether they do not substantially exceed the customary limits of candor in making such appeal; and (4) whether they are not utterly without redeeming social importance. The first request is really for a conclusion. All requests are drawn in the context of an on-the-merits pretrial determination as to the obscene character of the material. At the level of judicial inquiry involved here, the question would be whether a person of ordinary intelligence and receptivity would conscientiously entertain a strong suspicion that the material had any of the listed characteristics. Furthermore, again dispositive of this contention is the factor that our record does not enable us to say that there was a record before the superior court which would call for it to make findings on the subjects listed.

As to the fifth contention (proceedings failed to provide speedy determination of whether film and photographs were protected by or excepted from free speech provisions of the constitutions), it appears that it applies to an on-the-merits obscenity determination which was never put to the magistrate whose ruling was under review by the superior court. If a prompt probable cause hearing is the subject of this contention, it was, in our opinion, achieved, as we have pointed out.

The answer to Seltzer's sixth, and final, contention on appeal (overbroad and vague construction of Penal Code's section 311 obscenity definition) is that the construction which appears to have been utilized in this case is not unique and similar contentions made in the leading California cases have not produced rulings or dicta giving comfort or encouragement to Seltzer. (*Cohen* v. *Municipal Court,* 250 Cal.App.2d 861, 868-869 [58

Cal.Rptr. 846]; *Kirby* v. *Municipal Court,* 237 Cal.App.2d 335, 342-343 [46 Cal.Rptr. 844]; cf. *Roth* v. *United States* (1957) 354 U.S. 476, 492 [1 L.Ed.2d 1498, 1511, 77 S.Ct. 1304].)

The judgment is affirmed.

Stephens, Acting P. J., concurred.

**AISO, J.**—I respectfully dissent. In my opinion, the film was seized by virtue of an invalid warrant. The superior court expressly found that the magistrate issued the search (seizure) warrant relying solely upon the affidavit of Officer Serio. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 109, fn. 1 [12 L.Ed.2d 723, 725, 84 S.Ct. 1509, 1511, fn. 1].) Accordingly, this court held in *People* v. *Thompson* (1970) 6 Cal.App.3d 945 [86 Cal.Rptr. 327], that a warrant of arrest issued solely upon the basis of an insufficient affidavit was invalid. The language of subdivision (c) of section 1538.5 of the Penal Code that "[w]henever a search or seizure motion is made in the municipal . . . court as provided in this section, the judge or magistrate shall receive evidence on any issue of fact necessary to determine the motion" does not require a deviation from the *Aguilar* rule and compel our going beyond the affidavit itself to determine the validity of the search (seizure) warrant in this case.

Officer Serio's affidavit fails to meet the requirements of *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], cert. denied 395 U.S. 910 [23 L.Ed.2d 223, 89 S.Ct. 1743], which holds that expert opinion testimony that the material in question is obscene, applying a contemporary statewide community standard, is a *sine qua non.* Even judges, it would appear, are not competent to determine the question of obscenity without the benefit of such expert testimony. Although my personal views were expressed in *People* v. *Pinkus* (1967) 256 Cal.App.2d Supp. 941, 947 [63 Cal.Rptr. 680], I now feel bound by *In re Giannini, supra. (Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) The fact that we deal only with probable cause here does not eliminate the requirement of competent expert opinion testimony in my opinion, at least to the extent of informing the magistrate as to what the contemporary statewide community standard is. Officer Serio has not set forth facts sufficient to qualify himself as an expert in this regard. It is not an easy task to so qualify when even justices of the United States Supreme Court find the constitutional criteria of obscenity unclear.[1] The

---

[1]Stewart, J. concurring in *Jacobellis* v. *Ohio* (1964) 378 U.S. 184, 197 [12 L.Ed.2d 793, 803-804, 84 S.Ct. 1676, 1683]: "I shall not today attempt further to define the

demarcation between what is constitutionally protected and what is obscene is at best a "dim and uncertain line" (*Bantam Books* v. *Sullivan* (1963) 372 U.S. 58, 66 [9 L.Ed.2d 584, 590, 83 S.Ct. 631, 637]). Furthermore, Officer Serio's language that the motion picture "is obscene within the meaning of the Penal Code of the State of California and the opinions of the United States Supreme Court" strikes me as a studied circumvention of the opinions of our State Supreme Court and their teachings, which fact becomes patent by his statements made upon cross-examination in the oral testimony received upon issues other than his affidavit being insufficient on its face.

Thus the search (seizure) warrant was invalid in my opinion and the seizure of the film under that warrant illegal. Having reached this conclusion, it is unnecessary to consider the other points raised by the parties, other than the availability of the mandamus proceeding.

The mandamus proceeding should be available under the circumstances of this case. The method of appeal and return of the films seized as prescribed by section 1538.5 of the Penal Code, as analyzed in detail by the court's opinion, is inadequate to provide the speedy remedy in this First Amendment area which is required by *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734]. Use of remedies other than the Penal Code section 1538.5 procedure is expressly reserved by subdivision (n) of section 1538.5. It provides in part: "Nothing contained in this section shall prohibit a person from making a motion, otherwise permitted by law, to return property, brought on the ground that the property obtained is protected by the free speech and press provisions of the federal and state constitutions."

A petition for a rehearing was denied July 8, 1970, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied September 11, 1970. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.

---

kinds of material I understand to be embraced within that shorthand description [hard-core pornography]; and perhaps I could never succeed in intelligibly doing so. *But I know it when I see it,* and the motion picture involved in this case is not that." (Italics added.)

Harlan, J. dissenting in *Memoirs* v. *Massachusetts* (1966) 383 U.S. 413, 455 [16 L.Ed.2d 1, 26, 86 S.Ct. 975, 996]: "The central development that emerges from the aftermath of *Roth* v. *United States,* 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], is that no stable approach to the obscenity problem has yet been devised by this Court."

Black, J. concurring and dissenting in *Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130, 171 [18 L.Ed.2d 1094, 1120-1121, 87 S.Ct. 1975, 2000]: "It strikes me that the Court is getting itself in the same quagmire in the field of libel in which it is now helplessly struggling in the field of obscenity. No one, including this Court, can know what is and what is not constitutionally obscene or libelous under this Court's rulings."