Opinion
COLE, P. J.
The People appeal from an order which granted respondent’s motion to suppress evidence seized under a search warrant. At issue are two motion pictures entitled, respectively, “PB-1” and “LX-9 (The Fist Fucker)” (hereafter “LX-9”). The trial court granted the motion *Supp. 34 to suppress on the ground that the decision to issue the search warrant could only be made after the magistrate determined that the films in question were in fact obscene, “by either examining the entire work personally, or having the officers who saw the film describe it . fully and completely to him.” We affirm, finding the affidavit in support of the search warrant to be insufficient to enable the magistrate to determine that there was probable cause to believe the films to be obscene, taking them as a whole.
Facts
The affidavit in support of the search warrant was executed by Officer Dunkin of the Los Angeles Police Department. The affidavit described Officer Dunkin’s experience (he had been a police officer for six years; for the past three years he had been assigned to investigating vice offenses, and specifically for the past year obscenity violations; and he had received both formal and informal training (not otherwise described) in the manner in which commercial pornography is conducted within the State of California and the County of Los Angeles).
With respect to film PB-1, the affidavit stated that Investigator Martin of the Los Angeles Police Department ordered the film from a brochure sent to him by “Kamera.” The affidavit states “The picture in the brochure, which was supposed to depict the content of film ‘B-T showed three (3) males engaged in an act of mutual oral copulation.” The brochure itself contains a black and white picture labeled “B-l” on a page with three other pictures, the page being captioned “Kamera Ready Male Films.” The picture shows three naked men, orally copulating each other. The trial court described this picture as being obviously obscene, taken by itself, and without reference to the entire work. With respect to film PB-1 itself, the affidavit states “Upon viewing film ‘PB-1,’ Investigator Martin No. 12456 observed it to contain the same act of oral copulation, as was depicted in the brochure from which it was ordered.”[1]
Turning to the second film at issue here, “LA-9,” the affidavit recites that Officer Dunkin sent for it, using the order form on the bottom portion of one of the brochures. The affidavit states “The picture in the brochure, advertising that particular film, was a drawing depicting a male, placing his hand, and arm into the rectum of a second male.” Our inspection of the brochure shows that a male figure with an erect penis is *Supp. 35 inserting his hand and arm as described, and that a second erect penis, apparently belonging to someone not otherwise portrayed, appears in the upper right portion of the drawing. The drawing is labeled with the name of the film. The trial court characterized this picture in identical manner as with the picture of film B-1.
As to the film “LX-9” itself, the affidavit states: “On 7-23-75, your affiant viewed the film LX-9 (The Fist Fucker) and observed the film to contain explicit sexual acts between males. The film showed acts of oral copulation, sodomy and masturbation. The film also depicted a male inserting his hand into the rectum of a second male.”
Discussion
The People contend that the trial court erred. It is their argument that the court decided the ultimate question of obscenity of the films, instead of the question of probable cause. Citing People v. Haskin (1976) 55 Cal.App.3d 231, 236 [127 Cal.Rptr. 426], Monica Theater v. Municipal Court (1970) 9 Cal.App.3d 1, 13 [88 Cal.Rptr. 71], and People v. De Renzy (1969) 275 Cal.App.2d 380, 387 [79 Cal.Rptr. 777], the People point out, correctly, that the suggestion that material must be found to be in fact obscene before a warrant may issue has been rejected. That rejection includes a rejection of the proposition that a magistrate must personally view a film before issuing a search warrant for its seizure.
The problem here, however, is a different one. It is that the affidavit in support of the warrant does not show probable cause to believe that the public offense of violating Penal Code section 311.2 had occurred, because nothing at all was presented to the magistrate from which he could reach the conclusion that, taken as a whole, there was probable cause to believe that the films were obscene.
We need not dwell here on “the somewhat tortured history” (Miller v. California (1973) 413 U.S. 15, 20 [37 L.Ed.2d 419, 428, 93 S.Ct. 2607]) of the United States Supreme Court’s efforts to delineate what is constitutionally acceptable in the regulation of obscenity. Those efforts are recounted in the Miller decision (413 U.S. at pp. 18-23 [37 L.Ed.2d at pp. 427-430]) and in the dissenting opinion of Mr. Justice Brennan in a companion case (Paris Adult Theatre I v. Slaton (1973) 413 U.S. 49, 73, 78-83 [37 L.Ed.2d 446, 466-467, 469-473, 93 S.Ct. 2628]). Suffice it to say that the majority of the court in Miller acknowledged “the inherent dangers of undertaking to regulate any form of expression” (Miller v. *Supp. 36 California, supra, 413 U.S. at p. 23 [37 L.Ed.2d at p. 430]) and held that state statutes designed to regulate obscene materials must be carefully limited, inter alia, “to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political or scientific value. . . .” (Id., at p. 24 [37 L.Ed.2d at pp. 430-431]; italics added.) For the even stricter California standard, which also incorporates the “taken as a whole” concept, see Penal Code section 311, subdivision (a), Bloom v. Municipal Court (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229] and People v. Enskat (1973) 33 Cal.App.3d 900 [109 Cal.Rptr. 433].
The United States and California Supreme Courts have expressed similar concern about constitutional restraints on the regulation of suspected obscenity when the question is whether a search warrant affidavit was based upon probable cause to believe that the material to be seized was obscene.
In Marcus v. Search Warrant (1961) 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708] the Supreme Court held unconstitutional the seizure of allegedly obscene books on the authority of a warrant “issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene.” (367 U.S. at p. 732 [6 L.Ed.2d at p. 1136].) The court held that a procedure which was not designed “to focus searchingly on the question of obscenity” (ibid.) “fell short of constitutional requirements demanding necessary sensitivity to freedom of expression.” (Lee Art Theatre v. Virginia (1968) 392 U.S. 636, 637 [20 L.Ed.2d 1313, 1315, 88 S.Ct. 2103].) In Lee Art Theatre the Supreme Court held a seizure of motion picture films to be unconstitutional where it was made “under the authority of a warrant issued by a justice of the peace on the basis of an affidavit of a police officer which stated only the titles of the motion pictures and that the officer had determined from personal observation of them and of the billboard in front of the theatre that the' films were obscene. . . .” (392 U.S. at p. 636 [20 L.Ed.2d at p. 1315].) See, also, Roaden v. Kentucky (1973) 413 U.S. 496 [37 L.Ed.2d 757, 93 S.Ct. 2796].
The considerations involved in determining whether there is probable cause to believe that particular matter is obscene were perceptively delineated by the California Supreme Court in Aday v. Superior Court (1961) 55 Cal.2d 789, 797-798 [13 Cal.Rptr. 415, 362 P.2d 47], a case decided one month before the decision of the United States Supreme *Supp. 37 Court in Marcus v. Search Warrant, supra, 367 U.S. 717. The California court said:
“The question is also presented whether Ryken’s affidavit showed probable cause for believing petitioners to be guilty of conspiring to publish and distribute obscene books. Because of the dangers inherent in all censorship, the requirement of probable cause is especially important where, as here, freedom of speech and press is involved, and great caution must be exercised before permitting the seizure of books on the ground of obscenity. In the past, many works that are truly great have been banned, and it is obvious that censorship which is too rigid may impoverish the intellectual life of the community. (See United States v. One Book Entitled Ulysses, 72 F.2d 705, 708; Bantam Books, Inc. v. Melko, 25 N.J. Super. 292 [96 A.2d 47, 52] (mod. and aff’d, 14 N.J. 524 [103 A.2d 256]); Paul and Schwartz, Obscenity in the Mails, 106 U.Pa.L.Rev. 214, 218; Chafee, Free Speech in the United States (1948) pp. 529 et seq.) The literaiy, educational, scientific, or other social values of a book alleged to be obscene are to be taken into consideration, and a book lacking these qualities is more likely to be condemned than one possessing them. (See Parmelee v. United States, 113 F.2d 729, 735; United States v. One Book Entitled Ulysses, 72 F.2d 705, 706-708; American Civil Liberties Union v. City of Chicago, 3 Ill.2d 334 [121 N.E.2d 585, 592]; Bantam Books, Inc. v. Melko, 25 N.J. Super. 292 [96 A.2d 47, 52-63] (mod. and aff’d, 14 N.J. 524 [103 A.2d 256]); Lockhart and McClure, Censorship of Obscenity, 45 Minn.L.Rev. 5, 95-99; Lockhart and McClure, The Law of Obscenity, 38 Minn.L.Rev. 295, 343, 348.)
“Recently the United States Supreme Court defined obscene material as that which deals with sex in a manner appealing to prurient interest; it rejected the standard of judging obscenity by the effect of an isolated excerpt upon particularly susceptible persons and adopted instead the test ‘whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.’ (Roth v. United States, 354 U.S. 476, 487-489 [77 S.Ct. 1304, 1 L.Ed.2d 1498].) It should be emphasized that in applying these principles here we are concerned only with probable cause, not with the final determination as to the character of the named books or the guilt of petitioners. ...” In Aday the two books involved were attached to the search warrant affidavit and the court was able to determine the probable cause issue by inspecting them.
In People v. Superior Court (Freeman) (1975) 14 Cal.3d 82 [120 Cal.Rptr. 697, 534 P.2d 393], the court was faced with a situation where *Supp. 38 an officer had seen one film and concluded that it was obscene, and had also been handed “an album of still photographs, apparently containing memorable moments from some of the more explicit productions” (14 Cal.3d at p. 86) offered for sale by defendants. One of the defendants also stated that he had “some good action films” using a three-word rhyming couplet, expressed in the vernacular, to describe their content. The album and the film were seized by the officer without a warrant, along with other films. The California Supreme Court held the seizure to be unlawful. It emphasized the need for a judicial determination of probable cafise before matters presumptively protected by the First Amendment could be seized. The court rejected the claim that no warrant was needed because defendant (who was “employed in a continuing enterprise involving the preparation and distribution of sexually explicit material,” 14 Cal.3d at p. 85) had admitted the material was obscene. The court said: “Theatre marquees, billboards and newspaper advertisements all too often appeal to base instincts by making extravagant claims concerning the licentiousness depicted on movie screens, yet no serious claim could be made that mere suggestive or disparaging descriptions justify a warrantless seizure of the films [fn. symbol omitted]. Whatever reaction might be evoked by defendant’s inelegant assessment of content in the instant case, it is nonetheless clear that presumptively protected First Amendment material cannot be transmuted into contraband merely by the crude puffing of a seller who emphasizes its purported salacious features.” (14 Cal.3d at pp. 87-88.) In an accompanying footnote the court stated: “The facts of Lee Art Theatre may fairly be analogized to the instant case on this point. There the officer relied on the ‘representations’ of the theatre billboard as well as his own observations to obtain a warrant, but the procedure was still held inadequate. . . .”
In Monica Theater v. Municipal Court, supra, 9 Cal.App.3d 1, the court declined to follow several federal decisions which stood for the proposition that there must be an adversary hearing on the question of obscenity in motion picture film cases before a warrant for seizure of the films could be issued. In reaching its conclusion, the Court of Appeal pointed out that “we feel that one or more affidavits submitted to the magistrate in support of a request for a seizure warrant can be composed in a manner to focus searchingly on the question of obscenity. Detailed pictorial word descriptions of the continuity of the film plus the opinions of experts, whose qualifications are adequately given, can serve this purpose initially. . . .” (9 Cal.App.3d at p. 16.)
*Supp. 39 The People cite to us People v. Haskin (1976) 55 Cal.App.3d 231 [127 Cal.Rptr. 426] in support of their contention that the affidavit here involved was sufficient to support issuance of the warrant. Because the relevant part of the opinion is so short, and its exposition of the facts is so frustratingly sparse, we set forth the portion in full:
“Concerning denials of defendants’ motions to suppress evidence, made under Penal Code section 1538.5, defendants contend the court orders were prejudicially erroneous, first arguing that a search conducted on 24 May 1973 was unlawful because, although conducted pursuant to a search warrant, the supporting affidavit was not adequate.
“The hearing on defendants’ traverse of the search warrants (Pen. Code §§ 1538.5, subd. (a)(2), 1539) was held in the trial court beginning on 2 October 1973. Search warrant No. 10213, mentioned at the hearing, was issued 24 May 1973 and executed on 25 May 1973; warrants Nos. 10276 and 10276 A, B, C and D also were mentioned. (Copies of the warrants and their supporting affidavits are not included in the record on appeal, although photostatic copies of warrant No. 10213 and its supporting affidavit appear to be included.) It is the orders denying these traverses to which defendants’ appeal first is directed. The validity of the warrants was, under a stipulation, to be determined by the trial court, by reading them and the transcript of a municipal court hearing. We have attempted, [fn. omitted] without success, to obtain warrants Nos. 10276 etc. and their supporting affidavits.
“Warrant No. 10213 was executed 25 May 1973 at 12970 Branford Street in Los Angeles. Police Sergeant Gaida, an expert in the field of commercial pornography, made an affidavit in support of issuance of the warrant; his testimony also appears in the transcript mentioned. These disclosed that, at an address on Branford Street, (the address later mentioned in the search warrant), Gaida observed a young woman affixing pornographic photographs to the outside of small eight mm. film boxes, which smaller boxes she then placed in larger boxes; it is common practice in the commercial pornographic field to show, in this fashion, the content of films in the boxes. After making this observation from outside the premises, and, thereafter, learning the names of the films intended for the boxes, Gaida left two police officers at the premises, to secure the building and to insure that the property to be seized would not be removed or destroyed. He then went to make out the papers necessary for a search warrant. No officer opened the film boxes or viewed any films found in them, although Gaida testified T was convinced there were reels of films inside the packages.’
*Supp. 40 “Defendants first contend that the magistrate issuing the search warrant should have viewed the films because, since a First Amendment right of free speech is involved, the use of ‘sensitive tools’ is called for in separating legitimate from illegitimate speech. (Speiser v. Randall (1958) 357 U.S. 513, 525 [2 L.Ed.2d 1460, 1472, 78 S.Ct. 1332].) Thus, defendants contend the magistrate issuing the warrant could not rely upon Gaida’s description of the photographs but must, personally, view the films, ascertain their content and determine if the films depict illicit sexual activity. We disagree.
“A search warrant may be issued upon probable cause (Pen. Code, § 1525), interposing a magistrate’s determination between a police officer’s and the search for and seizure of obscene matter. (Skelton v. Superior Court (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; Flack v. Municipal Court (1967) 66 Cal.2d 981, 991-992 [59 Cal.Rptr. 872, 429 P.2d 192].) In obscenity cases, evidence of community standards is not needed to show probable cause. (Aday v. Superior Court (1961) 55 Cal.2d 789, 798 [13 Cal.Rptr. 415, 362 P.2d 47]; People v. Sarnblad (1972) 26 Cal.App.3d 801, 807-808 [103 Cal.Rptr. 211].) An examination of the affidavit for the search warrant convinces us there was probable cause for believing the films (and attached photographs) to be obscene and it was not necessary for the magistrate to see the films.” (55 Cal.App.3d at pp. 235, 236.)
The opinion in Haskin may be explainable upon the ground that the court only purported to hold that the magistrate need not personally view the films in question. There is no discussion of the sufficiency of a showing of probable cause to believe that the films, taken as a whole, were obscene. Thus, it might be sufficient for us to distinguish Haskin with the simple statement that a decision is not authority for propositions not decided by it. “The ratio decidendi is the principle or rule which constitutes the ground of the decision, and it is this principle or rule which has the effect of a precedent.” (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4589.)
The People urge, however, that Haskin disposes of all of the issues in this case and that Haskin decided that probable cause to support a search warrant seeking to seize an allegedly obscene film may be based upon one obscene photograph or drawing contained in the film. We have before us neither the affidavit nor the testimony of the officer which the Haskin court read. We deem it improbable that the justices who participated in that opinion intended it as a holding to that effect, given *Supp. 41 the constitutional doctrine to the contrary which we have discussed above. We have examined the briefs in that case, however, and note that appellant argued the insufficiency of the search warrant affidavit because it could not be determined therefrom that, taken as a whole, the films involved were obscene. It is thus possible that the Haskin court may be said to have impliedly rejected this point, totally without discussion. If that is to be taken as a holding for the point contended for by the People, we must respectfully decline to follow it, inasmuch as it would conflict directly with the teachings of the decisions of the United States and California Supreme Courts which we have set forth. When there is a conflict between decisions of the Supreme Court and those of Courts of Appeal, the lower appellate court decisions must be disregarded and the Supreme Court decisions accepted as controlling. (Auto Equity Sales v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; 6 Witkin, Cal. Procedure, supra, p. 4608.)
The People further cite our recent opinion in People v. Green (1979) 94 Cal.App.3d Supp. 1 [156 Cal.Rptr. 713] for the proposition that we there rejected a defense argument that the description of the exterior of a film box was insufficient to establish probable cause and that we also rejected a contention “that the officer or the magistrate must view the film before a search warrant may lawfully issue.” In Green, however, we pointed out that the affidavit “not only described the picture (presumably a frame from the motion picture) but also quoted from the outside of the box a verbal description of the contents of the film." (Id., at p. 7, italics added.)
The facts of the present case, set out above with respect to each of the two films, are in sharp contrast. We need not repeat them. With respect to “B-l” the trial court had before it only an affidavit describing one frame of a motion picture, and a statement that the same scene appeared in the film. With respect to “LX-9” the court had a description of a single drawing, and a statement that the film contained depictions of acts of oral copulation, sodomy and masturbation as well as a depiction of a fist insertion. In neither case did the affiant describe the contents of the film with a “detailed pictorial word description ... of its continuity” (Monica Theater v. Municipal Court, supra, 9 Cal.App.3d 1, 16) or any other kind of description of the film taken as a whole. Obviously, if it was insufficient in Lee Art Theatre v. Virginia, supra, 392 U.S. 636 for a justice of the peace to issue a warrant based merely on an officer’s affidavit which stated only the titles of the motion pictures, and that the officer had determined from personal observation of them and of a billboard in front of the theater that they were obscene, the affidavit here is equally insufficient.
*Supp. 42 In this state of the record the trial court correctly observed that probable cause was lacking. The court’s comments that a search warrant may not issue unless either the magistrate examines the entire work personally or officers who saw the film fully and completely describe it to him must be taken to mean not that the court was determining the ultimate fact of obscenity, but only that the court recognized the constitutional imperative that some record be presented from which probable cause could be gleaned, taking the work as a whole.
The order appealed from is affirmed.
Dowds, J., and Saeta, J., concurred.
A petition for a rehearing was denied on August 16, 1979, and the following opinion was then rendered:

 The parties make no point of the fact that the film is discrepantly referred to both as “B 1” and “PB 1.” Neither do we.