[S. F. No. 20619. In Bank. May 11, 1961.]

SANFORD E. ADAY et al., Petitioners, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.

Robert L. Brock and Stanley Fleishman for Petitioners.

J. F. Coakley, District Attorney, Richard J. Moore, William H. Ahern, John A. Lewis, John J. Fox and Thomas J. Buckley, Deputy District Attorneys, for Respondent.

GIBSON, C. J.—Petitioners, book publishers and distributors whose principal place of business is Fresno, applied to the District Court of Appeal for a writ of mandamus to compel the Superior Court of Alameda County to return to them property taken under an assertedly invalid search warrant. Relief was denied without opinion, and following a petition to this court for hearing we issued an alternative writ.

On September 16, 1960, Charles Ryken, a police officer from Alameda County, requested the Honorable Dan B. Eymann, Judge of the Municipal Court for the Fresno Judicial District, to issue a search warrant, and the officer executed an affidavit stating that petitioners committed a felony in Alameda, San Francisco, and Fresno Counties in that they conspired to wilfully and lewdly publish, print, and sell "obscene and indecent writings, papers and books, to wit, '10:04 Sgt. Thorne,' also known as 'Sex Life of a Cop,' and 'Joy Killer,' among others" (Pen. Code, §§ 182, 311, subd. 3).[1]

---

[1]Section 182 of the Penal Code provides in effect that, if two or more persons conspire to commit any misdemeanor other than one constituting a crime against the person of specified governmental officials, they are punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than three years, or by a fine not exceeding five thousand dollars or both.

Section 311 of the Penal Code provides: "Every person who wilfully and lewdly, either: . . . 3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or book; or designs, copies, draws, engraves, paints or otherwise prepares any obscene or indecent picture or print; or molds, cuts, casts, or otherwise makes any obscene or indecent figure; . . . is guilty of a misdemeanor."

Copies of the two named books were attached to and made part of the affidavit, and it was stated that they had been purchased in Hayward by a police officer of that city. The affidavit also contained statements from which it appeared that one of the named books was published by petitioner Vega corporation and the other by petitioners Saber corporation and Mid-Tower corporation and that both books were assembled at one Fresno address and were distributed by petitioner West Coast News Company, which was the distributor of all Vega and Saber books. It was further averred that Mid-Tower was the "publisher of Saber Books," that one of the individual petitioners, Sanford E. Aday, was the sole owner of Mid-Tower and Vega, that Aday and another petitioner, Matthew Meehan, were officers of these two corporations and of West Coast, and that the third individual petitioner, Wallace Maxey, was an officer of Vega and West Coast.

In requesting that a warrant issue commanding the search of the persons of the individual petitioners and certain premises in Fresno, the affiant stated that he had probable cause to believe, and did believe, that there were in the possession of these individuals and on the premises described the following articles which were used as a means of committing a felony: 1. "Checks, check stubs, cancelled checks, check books and bank statements." 2. "Sales records and purchase records." 3. "Customers' correspondence and customers' orders." 4. "Invoices." 5. "Bills." 6. "Vouchers." 7. "Statements." 8. "General ledgers, cash receivable ledgers, cash disbursement ledgers, subsidiary accounts receivable ledgers and subsidiary accounts payable ledgers." 9. "Mailing lists." 10. "Duplicate copies of federal and state income tax returns" of the individual and corporate petitioners "for the year 1959." 11. "Articles of Incorporation." 12. "Minutes of the board of directors." 13. "Stockholder records." 14. "Corporate records" of the corporate petitioners. 15. "Corporate records, papers, correspondence, sales receipts and bills of lading having to do with" the corporate petitioners. 16. "Books and magazines, including 'Sex Life of a Cop' also known as '10:04 Sgt. Thorne,' and 'Joy Killer,' but not limited thereto." 17. "Model releases, writings, stories, cartoon and advertisements." 18. "Contracts." 19. "Any and all other records and paraphernalia connected with" the business of the corporate petitioners.

Judge Eymann, after reading portions of the two named books, issued a warrant reciting that proof had been made

by Ryken's affidavit that petitioners had conspired as alleged and that the 19 categories of property described in the affidavit (which were set forth in the warrant) were used by petitioners as a means of committing the felony. The warrant stated that there was probable cause to believe that the described property was concealed upon the persons of the individual petitioners and the premises at two Fresno addresses, namely, the address of Mid-Tower and the address of the building where the two named books, as well as all books published by Vega, were assembled, and it commanded that the executing officers search these persons and premises for the property.

Police officers of Fresno and Alameda Counties, acting under the general direction of Deputy District Attorney Ahern of Alameda County, went with the warrant to the addresses specified in it and conducted a search of those premises for approximately eight hours. The officers seized thousands of copies of the two books named in the affidavit and the warrant. Sample copies of over 50 other books were also taken, as well as certain photographs and magazines. A great variety of papers and records were seized including orders, invoices, letters, checks and a checkbook, savings account books, articles of incorporation, ledgers, manuscripts, blank tax returns, and lists of dealers, news agencies and accounts. The property was brought on the evening of September 16 to the home of Judge Eymann, and he ordered that it be taken to the Fresno jail.

On September 19 petitioners served and filed with the magistrate a traverse of the grounds for issuance of the warrant and a notice of a motion for restoration of the seized property pursuant to the provisions of sections 1539 and 1540 of the Penal Code.[2] They claimed that the warrant was invalid and that in any event property was taken which was not the same as that described in the warrant. A hearing was commenced that morning before Judge Eymann and was continued until September 20 at the request of petitioners.

---

[2] Section 1539 of the Penal Code provides: "If the grounds on which the warrant was issued be controverted, he [the magistrate] must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated in the manner prescribed in section 869."

Section 1540 of the Penal Code provides: "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

Later on September 19 Ahern obtained an order from the Honorable Charles Wade Snook, Judge of the Alameda County Superior Court, directing that the seized property be brought to Alameda County, and this was done in the evening of the same day. Judge Eymann was not consulted but was informed that evening by Ahern of what had occurred. On September 20 the magistrate talked by telephone to Judge Snook, who stated that in his opinion the removal of the property to Alameda County was legal, that he intended to have the property presented to the Alameda County Grand Jury the next day, and that he was aware that no hearing on the validity of the search and seizure had been held in Fresno. Judge Eymann was of the view that the presence of the property in Fresno was essential in order to proceed with the hearing, and, over the objections of petitioners, the matter was continued until September 29.

Upon resumption of proceedings Ahern stated that it was impossible to present the property because it was still in the possession of the Alameda County Grand Jury, which would be in session until October 24. A hearing on the validity of the warrant was then held, and it was agreed that, if Judge Eymann should determine that the warrant was valid, another hearing would be held on November 18 to pass upon the issue whether property not described in the warrant was taken. The magistrate determined the warrant was valid, and petitioners instituted this mandamus proceeding for the return of their property.

Article I, section 19, of the California Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated; and no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." Section 1525 of the Penal Code provides: "A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched." (See also Pen. Code, § 1529 [requiring "reasonable particularity" of description].)

�en Aside from the reference to copies of the 1959 federal and state income tax returns of petitioners and the naming of the two books attached to the affidavit, the description in the warrant before us consisted of a number of broad, general categories, the last of which embraced "any and all other

records and paraphernalia'' connected with the business of the corporate petitioners. Articles of the type listed in general terms in the warrant are ordinarily innocuous and are not necessarily connected with a crime. The various categories, when taken together, were so sweeping as to include virtually all personal business property on the premises and placed no meaningful restriction on the things to be seized. Such a warrant is similar to the general warrant permitting unlimited search, which has long been condemned. (See *People* v. *Berger*, 44 Cal.2d 459, 461 [282 P.2d 509].)[3] The early case of *Entick* v. *Carrington*, 19 Howell's State Trials 1029 (1765), held that a warrant which authorized the seizure of defendant's ''books and papers'' was too general and was invalid, and this court has held that a reference in a warrant to property as ''personal goods and property, to-wit, certain paraphernalia,'' without any further specification, does not satisfy the requirement of reasonable particularity of description (*People* v. *Mayen*, 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383]). The warrant in the present case did not comply with that requirement except with regard to the 1959 income tax returns and the two named books, and therefore it did not constitute legal authorization to search for and seize the articles that were insufficiently described.

 The warrant was invalid with respect to the copies of the federal and state tax returns because they were privileged and therefore exempt from seizure. (*Webb* v. *Standard Oil Co.*, 49 Cal.2d 509, 512-514 [319 P.2d 621].) It was held in the Webb case that the provisions of the Revenue and Taxation Code disclose an intent to preserve the secrecy of tax returns except in a few specified situations (Rev. & Tax. Code, §§ 19282-19287) and that, where federal returns may be assumed to contain the same information as is sought from state returns, forcing disclosure as to either will defeat the purposes of the code. While that case involved only the sections of the code relating to personal income taxes, there are substantially identical provisions with respect to corporation taxes. (Rev. & Tax. Code, §§ 26451-26453c.) The sole exception permitting disclosure for purposes of a criminal prose-

---

[3] In 1761 James Otis declared the infamous writs of assistance, which permitted officers in their discretion to search premises for smuggled goods, to be ''the worst instruments of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book'' since they placed ''the liberty of every man in the hands of every petty officer.'' (See *Boyd* v. *United States*, 116 U.S. 616, 625 [6 S.Ct. 524, 29 L.Ed. 746].)

cution appears in sections 19283 and 26453, which are limited to prosecutions for tax violations, thereby indicating that disclosure is not to be made in other criminal cases.

Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. (*Cf. United States* v. *Nine 200-Barrel Tanks of Beer,* 6 F.2d 401, 402; *United States* v. *Bell,* 48 F.Supp. 986, 997.) In so holding we do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

The question is also presented whether Ryken's affidavit showed probable cause for believing petitioners to be guilty of conspiring to publish and distribute obscene books. Because of the dangers inherent in all censorship, the requirement of probable cause is especially important where, as here, freedom of speech and press is involved, and great caution must be exercised before permitting the seizure of books on the ground of obscenity. In the past, many works that are truly great have been banned, and it is obvious that censorship which is too rigid may impoverish the intellectual life of the community. (See *United States* v. *One Book Entitled Ulysses,* 72 F.2d 705, 708; *Bantam Books, Inc.* v. *Melko,* 25 N.J. Super. 292 [96 A.2d 47, 52] (mod. and aff'd, 14 N.J. 524 [103 A.2d 256]); Paul and Schwartz, *Obscenity in the Mails,* 106 U. Pa.L.Rev. 214, 218; Chafee, Free Speech in the United States (1948) pp. 529 et seq.) The literary, educational, scientific, or other social values of a book alleged to be obscene are to be taken into consideration, and a book lacking these qualities is more likely to be condemned than one possessing them. (See *Parmelee* v. *United States,* 113 F.2d

729, 735; *United States* v. *One Book Entitled Ulysses,* 72 F.2d 705, 706-708; *American Civil Liberties Union* v. *City of Chicago,* 3 Ill.2d 334 [121 N.E.2d 585, 592]; *Bantam Books, Inc.* v. *Melko,* 25 N.J. Super. 292 [96 A.2d 47, 52-63] (mod. and aff'd, 14 N.J. 524 [103 A.2d 256]); Lockhart and McClure, *Censorship of Obscenity,* 45 Minn.L.Rev. 5, 95-99; Lockhart and McClure, *The Law of Obscenity,* 38 Minn.L.Rev. 295, 343, 348.)

Recently the United States Supreme Court defined obscene material as that which deals with sex in a manner appealing to prurient interest; it rejected the standard of judging obscenity by the effect of an isolated excerpt upon particularly susceptible persons and adopted instead the test ''whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.'' (*Roth* v. *United States,* 354 U.S. 476, 487-489 [77 S.Ct. 1304, 1 L.Ed.2d 1498].) It should be emphasized that in applying these principles here we are concerned only with probable cause, not with the final determination as to the character of the named books or the guilt of petitioners. ■ An examination of the two books convinces us there was probable cause for believing that they are obscene. Their text is such that an average person, applying contemporary community standards, could reasonably believe that their dominant theme appeals to a lascivious, shameful, and morbid interest in sex and that they are totally lacking in redeeming value, literary or otherwise. In view of their contents it was not necessary for Judge Eymann to read the books in their entirety or receive evidence as to contemporary community standards in order to determine the issue of probable cause.

■ The facts set forth in the affidavit are sufficient to warrant the belief that the petitioners involved in the publication and distribution of the named books were acting in concert. In view of the close relationship existing among them it may be assumed that all of them were aware of the contents of the two books, and there is probable cause to determine that persons who knew the contents of the books would realize that such material could reasonably be regarded as obscene in character.

■ Since there was probable cause to believe that the named books were used or were intended to be used as a means of committing the alleged offense, all copies on the premises could be seized under subdivisions 2 and 3 of section 1524

of the Penal Code unless, as urged by petitioners, the seizure constituted a previous restraint violating the constitutional guaranty of free speech and press.[4] ▮ Obscenity is not protected by the Constitution (*Roth* v. *United States,* 354 U.S. 476, 481, 486 [77 S.Ct. 1304, 1 L.Ed.2d 1498]), and, although previous restraint upon publication is in general prohibited, some exceptions have been recognized, among which is that "the primary requirements of decency may be enforced against obscene publications" (*Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436, 440 [77 S.Ct. 1325, 1 L.Ed.2d 1469] ; see *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 571-572 [62 S.Ct. 766, 86 L.Ed. 1031] ; *Near* v. *Minnesota,* 283 U.S. 697, 716 [51 S.Ct. 625, 75 L.Ed. 1357]). The Kingsley Books case upheld a New York statute providing for a civil suit to enjoin an obscene publication and for surrender and destruction of the obscene material upon entry of a final injunction. The opinion held that, in order to prevent frustration of judicial condemnation of obscene matter, a preliminary injunction could properly be issued for the period during which the question of obscenity is tried in an adversary proceeding complying with the requirements of due process. (354 U.S. at p. 440.)

▮ The seizure of all copies of an allegedly obscene book is not invalid if made on probable cause and if the owner of the book has adequate remedies by which to litigate the issue of obscenity. ▮ Where, as here, the seizure occurs under a warrant, an ex parte determination of the issue of obscenity, so far as probable cause is concerned, has taken place before issuance of the warrant, and immediately after the seizure a determination of the issue to that extent can be obtained in adversary proceedings by controverting the warrant under sections 1539 and 1540 of the Penal Code. In the event the owner is unsuccessful in that proceeding, a final determination as to obscenity will be had in the criminal action which will ordinarily follow within a reasonable time, or other remedies such as mandamus will be available to secure return of the property. (*Stern* v. *Superior Court,* 76 Cal.App.2d 772, 780, 784 [174 P.2d 34] ; *Atlas*

[4]Section 1524 of the Penal Code provides in part: "A search warrant may be issued upon any of the following grounds: . . . 2. When the property or things were used as the means of committing a felony. 3. When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense. . . . The property or things described in this section may be taken on the warrant from any place, or from any person in whose possession it may be."

*Finance Corp.* v. *Kenny,* 68 Cal.App.2d 504, 505 et seq. [157 P.2d 401] ; see *People* v. *Phillips,* 163 Cal.App.2d 541, 545 [329 P.2d 621].) These various remedies satisfy the requirements of due process, and the taking of all copies of the named books did not violate freedom of speech and press.

 The warrant constituted valid authorization for the search and seizure with respect to the named books but not with respect to the other property referred to in the warrant. It should be noted, however, that if any of the property seized other than the named books was contraband, petitioners are not entitled to its return. (*Steele* v. *United States, No. 1,* 267 U.S. 498, 503, 505 [45 S.Ct. 414, 69 L.Ed. 757] ; *United States* v. *Old Dominion Warehouse, Inc.,* 10 F.2d 736, 737-738.) Any property in possession of petitioners in violation of section 311 of the Penal Code was, of course, contraband. The seized property other than the named books is not before us, and, although much of it obviously was not contraband, it may be that some of it was. We are therefore unable to determine whether all the property other than the named books must be returned to petitioners or whether some of it is to be withheld. Additional proceedings will be necessary in order to make that determination, and they should be had in the municipal court in Fresno. Proceedings controverting the warrant were pending there in accordance with sections 1539 and 1540 of the Penal Code when respondent superior court ordered the removal of the seized articles to Alameda County. Those proceedings were commenced immediately after the seizure and could have been concluded expeditiously but for the removal of the property from Fresno. Under the circumstances present here, the action of respondent superior court was improper; it cannot be reconciled with orderly procedure and was not authorized by the code provisions applicable to searches and seizures made under a warrant. (Pen. Code, §§ 1523-1542.) The purpose of sections 1539 and 1540 is to provide one whose property is seized with a speedy remedy in a readily accessible court, and that purpose may be frustrated by removal of seized property to another county during the pendency of the proceedings provided for in those sections. The irregularity in procedure, however, did not operate retroactively to affect the validity of the search and seizure and has no bearing on our decision concerning return of seized property.

Let a peremptory writ of mandate issue directing respondent court to return all the seized property, except the copies of

the books named in the warrant, to the Municipal Court for the Fresno Judicial District for further proceedings in accordance with the views expressed in this opinion.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.