[Crim. No. 3726. Fourth Dist., Div. One. Feb. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GALE NAGEL, Defendant and Appellant.

## COUNSEL

George H. Chula for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—Gale Nagel appeals a judgment, after jury trial, convicting her on three counts of grand theft (Pen. Code, §§ 484-487). She does not challenge the sufficiency of the evidence supporting her conviction. She contends the court erroneously admitted evidence which the police seized during an illegal search.

Mrs. Nagel worked as a medical receptionist. The crimes for which she was convicted involved thefts from three of her doctor employers. She accomplished her thefts by setting up bank accounts, each in the name of an employer and a fictitious name jointly. She would divert checks received from patients into these accounts, then withdraw the funds using the fictitious name which she would assume for that purpose.

The activities of Mrs. Nagel and her husband (a codefendant below on one of the grand theft counts) became the subject of investigations both by local law enforcement and federal postal authorities. Two of the investigators, Detective Leonard E. Marshall of the City of Orange police

and Arthur John Teply, an investigator for the Orange County District Attorney's office, discussed the possibility of getting a search warrant to search the Nagels' apartment. They talked with a Mr. Briggs, who apparently is an administrative officer of the district attorney's office or City of Orange Police Department, through whom search warrant applications must clear before they were to be presented to a magistrate. Briggs inquired where Teply and Marshall wanted to search and what particular items they were seeking. Teply and Marshall explained they did not know the exact location of any records. Briggs refused to "give" them a search warrant to go on a fishing expedition.

Detective Marshall described on cross-examination what transpired after Briggs said they could not have a search warrant.

"By Mr. Chula: Q. Was there any alternative suggested to getting a search warrant?

"A. Issue the warrant of arrest and make an arrest.

"Q. Was this discussed with Mr. Briggs at that time?

"A. No. It is the only alternative we had.

"      .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. When you went to Mr. Briggs, you had—you wanted to get a search warrant to search the house?

"A. We had discussed the possibility of obtaining a search warrant, not specifically of the house, because we had no knowledge where these items were held.

"And they refused a search warrant.

"So our alternative, then, was to obtain a warrant of arrest and make an arrest.

"Q. And then do what?

"A. We had evidence prior to this, we just have to go with evidence we had.

"Q. Well, what were you going to do?

"A. Incident to the arrest, we would make a search.

"Q. That was your alternative instead of getting a search warrant which they wouldn't give you, you were going to arrest them and then search the house?

"A. We were going to look through the house.

"Q. You knew that when you went there?

"A. Yes.

"Q. And you were going to be looking for things you didn't know quite what, but you were going to hope you find something there that might be incriminating?

"A. We didn't know anything was there."

Officers Teply and Marshall pursued their "only alternative". Teply made his declaration in support of an arrest warrant. ■ The sufficiency of Teply's declaration is challenged by Mrs. Nagel both on its form and its substance. The formal challenge we find to be without merit, it being based upon Mrs. Nagel's contention a penalty of perjury declaration may not be used to support the issuance of an arrest warrant. Code of Civil Procedure section 2015.5 expressly provides for the use of such declarations in place of an affidavit and with the same force and effect as an affidavit. We do not reach Mrs. Nagel's contention the contents of the declaration were not sufficient to support the issuance of an arrest warrant as we find the search conducted incident to the arrest warrant which the magistrate issued was illegal on other grounds.

Having obtained arrest warrants for the arrests of Mr. and Mrs. Nagel, Teply and Marshall contacted Postal Inspector Wiley, who Marshall knew had an open case on the Nagels, to see if he was interested in being present to search the Nagels' apartment. Wiley accompanied Teply and Marshall to the Nagels' apartment, where, at 6 p.m., the officers executed the warrant by arresting the Nagels.

Following the arrest, Teply, Marshall and Wiley conducted what can only be described as an intensive, thorough search of the premises. The officers did not obtain the Nagels' consent to the search. There was no place in the apartment the officers failed to search. They looked at everything in the apartment. The three officers searched until 11:30 p.m., some 5½ hours after the arrests.

■ There can be no question the search exceeded the scope allowable as incident to an arrest under the case of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. However, the search took place December 28, 1968, and *Chimel* was decided June 23, 1969. Because *Chimel* is not to be given retroactive application (*People* v. *Edwards,* 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713]), we apply pre-*Chimel* standards to the search here.

"An arrest may not be. used as pretext to search for evidence." (*United*

*States* v. *Lefkowitz,* 285 U.S. 452, 467 [76 L.Ed. 877, 52 S.Ct. 420, 82 A.L.R. 775]; *People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) If the real object of the officers is the search and not the arrest and the arrest is a pretext for or at the most an incident of the search, the search is not reasonable within the meaning of the Constitution. (*People* v. *Haven, supra,* 59 Cal.2d 713, 719; *McKnight* v. *United States,* 183 F.2d 977, 978.) It would be difficult to envisage a clearer case of an arrest being used as a pretext to search than is presented here. The officers admitted their purpose was to search. When they were frustrated in their attempt to secure a search warrant, they utilized what they viewed as their only alternative—make an arrest and conduct an incidental search.

Moreover, the search here was of an intensity and scope which violated pre-*Chimel* constitutional standards (*Von Cleef* v. *New Jersey,* 395 U.S. 814 [23 L.Ed.2d 728, 89 S.Ct. 2051, 2052]). Three officers spent 5½ hours searching everything available to search. Most, if not all, of the search was conducted after the police took Mr. and Mrs. Nagel to the station. Much of what the officers seized in their search bore no conceivable relationship to the Nagels' arrests (e.g., a toy gun which the officer said might be linked to an armed robbery). To this extent the search took on an exploratory character which was emphasized by the participation of Postal Inspector Wiley. His interest stemmed from a criminal investigation unrelated to the Nagels' arrests.

We are unable to determine from the record what evidence introduced at trial was obtained as a result of the illegal search and what evidence might have been found legally through independent investigation. Under these circumstances we cannot say there existed no prejudice.

Judgment reversed.

Coughlin, J., and Ault, J., concurred.

A petition for a rehearing was denied March 3, 1970, and respondent's petition for a hearing by the Supreme Court was denied April 15, 1970.