[Crim. No. 26987. Second Dist., Div. Four. Feb. 13, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HASKIN et al., Defendants and Appellants.

COUNSEL

Burton Marks and Stephen Gilbert for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Joyce Luther, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DUNN, J.—In an indictment dated 4 October 1973, appealing defendants Haskin, Cornell, Marino, Greenberg, Ackerman, Ecktagraphics, Inc., Transcontinental Leasing Corp., Professional Processors, Inc., Proscene Productions, Inc., and Central Sales West, dba "Scan Imports," were charged with a conspiracy (Pen. Code § 182, subd. 1) with Gerald Franklyn, aka Gerald Lynn, aka Gerald Hozberg and with other persons, names unknown, to distribute obscene matter in violation of Penal Code section 311.2. The conspiracy was alleged to have occurred during a period of three years prior to 1 October 1973. Initially, appealing defendants pled not guilty but, pursuant to a plea bargain, defendants ultimately pled nolo contendere to the charge. Defendants were sentenced to one year in the county jail, but sentence was suspended and they were ordered placed on probation under various conditions. The defendants appealed (Pen. Code §§ 1237, 1538.5, subd.

(m)), and the trial court granted a stay of execution on the judgments (orders for probation) pending the outcome of their appeal.

Various motions were heard and argued before defendants each pled nolo contendere. Defendants appeal from the trial court's order (Judge Sheldon) for probation ("judgment," Pen. Code, § 1237) and from the various court orders denying their motions to suppress evidence made under Penal Code, section 1538.5 (Judge Ackerman), their motions for a nonstatutory dismissal under Penal Code sections 939-939.8 and for a dismissal under Penal Code section 995 as well as on their motions for claimed irregularity in the grand jury proceedings (Judge Smith).

Concerning denials of defendants' motions to suppress evidence, made under Penal Code section 1538.5, defendants contend the court orders were prejudicially erroneous, first arguing that a search conducted on 24 May 1973 was unlawful because, although conducted pursuant to a search warrant, the supporting affidavit was not adequate.

The hearing on defendants' traverse of the search warrants (Pen. Code §§ 1538.5, subd. (a)(2), 1539) was held in the trial court beginning on 2 October 1973. Search warrant No. 10213, mentioned at the hearing, was issued 24 May 1973 and executed on 25 May 1973; warrants Nos. 10276 and 10276 A, B, C and D also were mentioned. (Copies of the warrants and their supporting affidavits are not included in the record on appeal, although photostatic copies of warrant No. 10213 and its supporting affidavit appear to be included.) It is the orders denying these traverses to which defendants' appeal first is directed. The validity of the warrants was, under a stipulation, to be determined by the trial court, by reading them and the transcript of a municipal court hearing. We have attempted,[1] without success, to obtain warrants Nos. 10276 etc. and their supporting affidavits.

Warrant No. 10213 was executed 25 May 1973 at 12970 Branford Street in Los Angeles. Police Sergeant Gaida, an expert in the field of commercial pornography, made an affidavit in support of issuance of the warrant; his testimony also appears in the transcript mentioned. These disclosed that, at an address on Branford Street, (the address later mentioned in the search warrant), Gaida observed a young woman affixing pornographic photographs to the outside of small eight mm. film boxes, which smaller boxes she then placed in larger boxes; it is common

---

[1]Rule 12 (a), California Rules of Court.

practice in the commercial pornographic field to show, in this fashion, the content of films in the boxes. After making this observation from outside the premises, and, thereafter, learning the names of the films intended for the boxes, Gaida left two police officers at the premises, to secure the building and to insure that the property to be seized would not be removed or destroyed. He then went to make out the papers necessary for a search warrant. No officer opened the film boxes or viewed any films found in them, although Gaida testified "I was convinced there were reels of films inside the packages."

■ Defendants first contend that the magistrate issuing the search warrant should have viewed the films because, since a First Amendment right of free speech is involved, the use of "sensitive tools" is called for in separating legitimate from illegitimate speech. (*Speiser* v. *Randall* (1958) 357 U.S. 513, 525 [2 L.Ed.2d 1460, 1472, 78 S.Ct. 1332].) Thus, defendants contend the magistrate issuing the warrant could not rely upon Gaida's description of the photographs but must, personally, view the films, ascertain their content and determine if the films depict illicit sexual activity. We disagree.

A search warrant may be issued upon probable cause (Pen. Code, § 1525), interposing a magistrate's determination between a police officer's and the search for and seizure of obscene matter. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; *Flack* v. *Municipal Court* (1967) 66 Cal.2d 981, 991-992 [59 Cal.Rptr. 872, 429 P.2d 192].) In obscenity cases, evidence of community standards is not needed to show probable cause. (*Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 798 [13 Cal.Rptr. 415, 362 P.2d 47]; *People* v. *Sarnblad* (1972) 26 Cal.App.3d 801, 807-808 [103 Cal.Rptr. 211].) An examination of the affidavit for the search warrant convinces us there was probable cause for believing the films (and attached photographs) to be obscene and it was not necessary for the magistrate to see the films.

■ Defendants further contend that Gaida's initial entry onto the premises was unlawful. In this respect, a brief background summary is essential. Sergeant Sobota of the Los Angeles police department was initially investigating, for Interpol, (an international police agency) the possible forgery of a check for £6 which may have been raised to £60. Thus, a check for £6 had been sent to a London, England publication together with an advertisement for sex films. The publication refused to accept the ad and returned a check payable to "K. Lindholm." This purportedly was endorsed by one Brian Woods. Sergeant Sobota talked

on the telephone with Jim Hill, at an address given him for Woods by Interpol, and Hill stated to Sobota that he was a "film processor." Inasmuch as a film processor had tried to place the ad in London, Sobota thought it possible that Hill might be the producer of sex films and, since Sobota knew nothing of this field, he called in Sergeant Gaida as an expert in such matters. The two police officers went to Hill's place of business. Sergeant Sobota had first been to Hill's home and, by telephone from there, arranged to meet Hill the following day; Sobota thought it better not to wait until the next day to see Hill, so got Sergeant Gaida to go with him to Hill's place of business on Branford Street.

Defendants claim that Gaida's entry onto the Branford street address was unlawful, thus rendering his observations made there unlawful and his declarations in support of the warrant mere conclusions not based upon observed facts. In this respect defendants advance the view that Gaida came onto the premises under the pretext of making an investigation of a check, but really to look into possible obscenity violations. Defendants rely upon *People* v. *Haven* (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927] and *People* v. *Nagel* (1970) 4 Cal.App.3d 458 [84 Cal.Rptr. 353] for this assertion.

*Nagel, supra,* relies upon *Haven, supra,* for the statement that (p. 462): "If the real object of the officers is the search and not the arrest and the arrest is a pretext for or at the most an incident of the search, the search is not reasonable . . . ." This rule had no application here for several reasons. First, there is no evidence that any search was intended when the officers first went to the premises. To the contrary, the evidence shows they went there to complete a forged check investigation, Officer Gaida being present only in case pornographic material was observed there. Second, the two cases are so factually distinguishable from our own as to have no force. Third, Gaida's observations were made before he entered the building, he having observed the pornographic pictures being attached to the eight mm. film packages while he was still outside the building. Defendants' reliance upon *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33] and *Jacobs* v. *Superior Court* (1973) 36 Cal.App.3d 489 [111 Cal.Rptr. 449] is here inapropos.

Defendants further complain that Gaida was asked by defendant Hill to leave the premises and he did not. Gaida testified that Hill made no request that he leave until after he had been on the premises 10-15 minutes. By that time, Gaida and his fellow officers already had grounds to arrest Hill (Pen. Code, § 836) and to obtain a warrant to search the

premises and seize items in plain sight. (*People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].)

Defendants complain that seizure of the business records was accomplished without adequate information in the warrant's supporting affidavit. It is true that the affidavit contains only meager direct reference to business records,[2] but the affidavit does state there were hundreds of eight mm. movie film boxes and, attached to their exteriors was a four-inch color photograph, the movie film boxes being stacked inside of larger, open boxes. Several employees were seen working on the premises and it seems reasonable to deduce, from the extent of the operations, that business records such as those described in the warrant would exist and that these might identify people in control of the premises and any other people engaged in the commercial preparation and distribution of the material. Thus, the affidavit was adequate to support a warrant. (Pen. Code, § 1527; *Skelton* v. *Superior Court, supra,* 1 Cal.3d at p. 150; *People* v. *Stout* (1967) 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704].) However, the search warrant, itself, does not authorize the search for or seizure of any business records, but only five copies of described eight mm. films. No mention is made of business records. Thus, while the affidavit may justify issuance of a search warrant for the business records, the warrant is silent about them. (See *Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672 [103 Cal.Rptr. 379]; *Aday* v. *Municipal Court* (1962) 210 Cal.App.2d 229 [26 Cal.Rptr. 576].) To this extent, seizure of defendants' business records was over-broad.

Whether the business record evidence seized is crucial to the grand jury's indictment is a matter which we later discuss.

■  Defendants next urge us to find that the police officers seized the property before they obtained a search warrant, because two officers were left in control of the location. Defendants rely upon two cases, *People* v. *Shuey* (1975) 13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211] and *Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535 [106 Cal.Rptr. 452]. Neither case assists defendants since, in the Court of Appeal case, it is noted that the record is barren of evidence that defendant was likely to dispose of evidence (contrary to our case, where such evidence was

---

[2] "Your affiant further requests to search for and seize any business records including but not limited to shipping notices, receipts, invoices, checks, and any other records which tend to identify persons in control of the premises and any other persons who are engaged in the commercial preparation and distribution of the above described property."

introduced during the municipal court hearing) and the Supreme Court case also notes that, in the Court of Appeal case cited to us, the searching police officers could have gone to obtain a search warrant before going to defendant's premises. Here, such was not true; no search warrant could have been obtained before going to the premises.

Defendants next contend that seizures pursuant to warrants executed on July 12 were illegal. The record indicates that warrant No. 10276 was issued 11 July 1973. It authorized a search of the premises of Professional Processors, Inc., at 12970 Branford Street. The warrant was executed 12 July 1973.

Grand jury testimony given by Franklyn, aka Lynn and Hozberg, under an immunity (Pen. Code, § 1324) showed that Ecktagraphics, Inc., had various subsidiaries, including Transcontinental Leasing Corp., Professional Processors, Proscene Productions, Inc., and Central Sales West. Testimony before the grand jury was that "Regardless of what the corporation name was, it was all . . . one thing . . . Ecktagraphics." Ecktagraphics and its subsidiaries handled sexually explicit books and films, owned "adult" theatres and bookstores having arcade vending machines. Ecktagraphics had a sound stage and offices on Highland Avenue in the Hollywood section of Los Angeles, Professional Processors processed 8 mm. films and was located at 12970 Branford Street, Central Sales West dba "Scan Imports" distributed the films and publications at 1023 North La Brea Avenue, Proscene Productions made and distributed 8 and 16 mm. films at 5406 Flemish Lane and Transcontinental Leasing Corp. owned the arcade machines in which 8 mm. film was exhibited. James Haskin was president and owned all of the stock of Ecktagraphics. He was the boss of the other individually named defendants, of whom Marino was vice-president of the corporations, Cornell, Greenburg and Ackerman were associated with Ecktagraphics, Cornell also running Transcontinental Leasing, Ackerman and Greenberg also running Central Sales West. Excluding the film business, the bookstores, movie houses and distributorships had an income of between $25,000 and $27,000 per week.

Thus, the premises of Professional Processors at 12970 Branford Street was among those operated by defendants. Defendants make an argument concerning search warrants Nos. 10276 and 10276 A-D, but have neither included such warrants in any record furnished to us nor requested that the exhibits be transferred to us. (Cal. Rules of Court, rule 10(b).) We

have attempted to secure the official exhibits without success.[3] For the foregoing reasons, we do not consider appellants' points regarding them.

■ Defendants next contend that Penal Code section 311.2[4] is unconstitutional and void, arguing that it does not comply with obscenity standards appearing in *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607]. We disagree, relying upon the discussion of division five of this court in *People* v. *Enskat* (1973) 33 Cal.App.3d 900 [109 Cal.Rptr. 433], cert. den. (1974) 418 U.S. 937 [41 L.Ed.2d 1172, 94 S.Ct. 3225].

■ Defendants next argue that Penal Code section 311.2 is unconstitutional in that it violates the Fourteenth Amendment provisions for equal protection, because it classifies, as exempt, motion picture operators or projectionists.[5]

One limitation on legislation imposed by the equal protection clause is that "[a] classification which results in differences of treatment ' "must not be arbitrary, but must be based upon some differences in classes having a substantial relation to a legitimate object to be accomplished." ' " (*In re R. C.* (1974) 39 Cal.App.3d 887, 894 [114 Cal.Rptr. 735].) We see nothing unreasonable or arbitrary in the class of persons exempted from Penal Code section 311.2. Defendants' argument that the statute should exempt others (as: a bookstore clerk, an usher, a ticket taker) falls upon deaf ears, for a regulatory statute need not cover the whole of a permissible field and, recognizing degrees of evil, may deal only with the more important exemptions from such evils (see: 5 Witkin, Summary of Cal. Law (8th ed.) Constitutional Law, §§ 342, 343, pp. 3637-3640; 13 Cal.Jur.3d, Constitutional Law, § 322, pp. 595-596). The question of "intent" becomes more pertinent as the statute is carefully

---

[3] See footnote 1.

[4] Penal Code section 311.2 reads: "(a) Every person who . . . in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others . . . any obscene matter is guilty of a misdemeanor."

Penal Code section 311 defines "obscene matter" as: "(a) 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person applying contemporary standards, is to prurient interests, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance."

[5] Penal Code section 311.2, subdivision (b) reads: "The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to a motion picture operator or projectionist . . . ."

analyzed, (*In re Klor* (1966) 64 Cal.2d 816, 820-821 [51 Cal.Rptr. 903, 415 P.2d 791]), as we are required to do where a suspect classification appears, as here, involving a First Amendment right. (5 Witkin, *supra*, § 343, pp. 3639-3640; 13 Cal.Jur.3d, *supra*, § 337, pp. 627-629.)

■ Finally, defendants contend the trial court erred in failing to grant their Penal Code section 995 motion, first arguing that the grand jury was improperly instructed. (At a pretrial hearing, the court ordered that copies of the instructions to the grand jury be given to defendants. This was done.) The court instructed in the language of Penal Code sections 311, 311.2 and 311.5.[6] Defendants argue that the construction of sections 311 and 311.2 appearing in *People* v. *Enskat, supra,* 33 Cal.App.3d 900, was not read to the jury and that instructions on such construction were required by *Miller* v. *California, supra,* 413 U.S. at pp. 23-24 [37 L.Ed.2d at pp. 430-431].

We disagree with defendants. The grand jury was called upon only to determine if there was probable cause (Pen. Code § 995, subd. 2; *People* v. *Aday* (1964) 226 Cal.App.2d 520, 526 [38 Cal.Rptr. 199]; and see *People* v. *Luros* (1971) 4 Cal.3d 84, 89 [92 Cal.Rptr. 833, 480 P.2d 633]), to believe the materials were obscene, not if they were, in fact, obscene. "Probable cause" to believe is not the same as an actual finding. The materials seized and exhibited to the grand jury were sufficiently graphic and vivid to support its indictment.

■ Defendants next argue that no conspiracy (Pen. Code § 182, subd. 1)[7] was shown to the grand jury which received evidence of a violation only of Penal Code section 311.2, at most. Defendants' argument is that Penal Code section 182 is a general statute, whereas Penal Code section 311.2 is specific, and that, where a general statute includes matter contained in a special statute and the special statute conflicts with it, prosecution must be under the special statute. Defendants invite our attention to *In re Williamson* (1954) 43 Cal.2d 651 [276 P.2d 593] wherein a defendant was indicted for violation of Penal Code section 182, subdivision 1, in that defendant conspired to violate Business and Professions Code section 7028. Business and Professions Code

---

[6]Penal Code section 311.5 reads: "Every person who writes, creates, or solicits the publication or distribution of advertising or other promotional material, or who in any manner promotes, the sale, distribution, or exhibition of matter represented or held out by him to be obscene, is guilty of a misdemeanor."

[7]In pertinent part, Penal Code section 182 reads: "If two or more persons conspire: 1. To commit any crime. . . . All cases of conspiracy may be prosecuted and tried in the superior court . . . ."

section 7030 as it then read, specifically concerned a conspiracy to violate "any of the provisions of this chapter" (Contractors' Licensing Act) which would include Business and Professions Code section 7028. The court stated the question was whether Business and Professions Code section 7030 or Penal Code section 182 prevailed. The court concluded that section 7030 was a special statute, the indictment should have involved only that code section and the superior court was thus deprived of jurisdiction to try or sentence the defendant.

In our case, however, unlike *Williamson,* we are dealing with a lone conspiracy statute. Since there is no conflict between Penal Code sections 182 and 311.2 we conclude that the rule stated in *Williamson* is inapplicable; furthermore, that the evidence received by the grand jury was adequate to support a finding of probable cause to conspire. (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 667-668 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Morales* (1968) 263 Cal.App.2d 368, 375 [69 Cal.Rptr. 402]); and that a conspiracy is a distinct offense from the offense described in Penal Code section 311.2. (*People* v. *Travis* (1959) 171 Cal.App.2d 842, 844 [341 P.2d 851].)

■ As already stated, the evidence was sufficient to enable the grand jury to indict defendants for conspiracy. As to the corporations, defendants argue that the corporations subsidiary to Ecktagraphics were merely alter egos, for which reason there could be no conspiracy between them. No case so holding is brought to our attention by appellants and we disagree.

■ Regarding the individual defendants, defendants argue that "Linwood Carvell" *(sic)* was an employee of Ecktagraphics and there is "no evidence that he conspired with anyone" so that his indictment cannot be sustained. We disagree. A person may be employed by a corporation as an officer, director or otherwise, so that Cornell's (Carvell's) status as an employee is not determinative. What is relevant, is the evidence from which could be inferred his participation in the conspiracy. Cornell (Carvell) was in charge of Transcontinental Leasing Corp., which company owned the arcade machines in which obscene films were exhibited. As stated in *Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178 at page 184 [281 P.2d 250]: " 'Direct proof of a formal understanding between parties to the conspiracy is not required as the basis of an indictment or information. "[I]t was not necessary for the State to prove that the parties actually came together, mutually discussed their common design, and after reaching a formal agreement set out

upon their previously agreed course of conduct. The extent of the assent of minds which are involved in a conspiracy may be, and from the secrecy of the crime usually must be, inferred by the jury from the proofs of the facts and circumstances which, when taken together, apparently indicate that they are parts to the same complete whole." ' "

██ Defendants argue that the indictment violates First Amendment rights of free speech. We disagree with defendants. Obscene matter is not protected by such rights, nor are the rights protected "absolutes." (*Miller* v. *California, supra,* 413 U.S. at p. 23 [37 L.Ed.2d at p. 430]; also see *People* v. *Luros, supra,* 4 Cal.3d at p. 92.)

Finally, we have examined the record of the business records received by the grand jury and conclude such records were not essential to that body's finding of probable cause to indict. For this reason, the fact that seizure of the business records, purportedly under the warrant, itself, (although within the scope of the affidavit supporting the warrant) is not here of sufficient significance to consider.

The judgments are affirmed.

Kingsley, Acting P. J., and Jefferson, (Bernard), J., concurred.

A petition for a rehearing was denied March 3, 1976, and appellants' petition for a hearing by the Supreme Court was denied April 28, 1976. Wright, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.