Opinion
DOWDS, Acting P. J.
The People and the defendants both appeal from an order granting in part and denying in part defendants’ motion to suppress evidence seized under search warrants. Police officers, on evidence of probable cause which satisfied the magistrate, secured a search warrant identified by number 13603 and hereinafter called the first warrant to search a warehouse and a store, among other premises, for, *Supp. 4 among other items, two named 8 mm. motion picture films and three named magazines. While conducting searches of the warehouse and store the officers encountered and opened certain cartons, some of which were closed and sealed, and found therein smaller boxes which they believed contained film. These smaller boxes bore titles which were different from the titles of the films for which they were searching under the first warrant. To observe the exterior of some of the boxes it was necessary to move other boxes also bearing film titles different from those described in the first warrant. Each box bore an identifying name, a photograph and a narrative description. The officers prepared an affidavit describing the boxes in detail.[1] On the basis of the affidavit the officers procured the issuance of a further search warrant identified by number as No. 13604 and hereinafter called the second warrant. The affidavit in support of the second warrant detailed the extensive experience of the affiant in the investigation of obscenity violations and his training and experience respecting pornography. The affiant officer further stated that he had noted in the course of such experience that commercial distributors of pornographic films acquaint prospective buyers with the content of the film by the photographs and drawings appearing on the outside of the film box. Based upon the foregoing, the affiant officer declared that in his opinion the film boxes contained films which fell within the purview of section 311.2 of the Penal Code.
The second search warrant contained three paragraphs. Paragraph 1 authorized the search of the warehouse described in the affidavit and the seizure of three copies of each of twenty-eight 8 mm. motion picture films bearing titles which the officers had observed on film boxes in executing the first warrant. Paragraph 2 authorized the seizure of “all additional copies” of 12 of the films. (Apparently a lesser number of films was described in the second paragraph than in the first because the films listed in the second paragraph involved juveniles whom the officers wanted to protect from exploitation.) The third paragraph authorized the search of the store premises described in the affidavit and the seizure of the three copies each of eleven described films. Films and other materials were *Supp. 5 seized pursuant to the search warrants and the defendants were charged with violations of Penal Code section 311.2, possession of obscene matter with intent to distribute the same. They moved under section 1538.5 of the Penal Code to suppress the evidence seized under both warrants on the grounds that the search warrants were improperly issued and the evidence taken by unlawful search.
The trial court granted the motion as to 12 of the films seized pursuant to the second search warrant on the ground that they were the product of an unlawful mass seizure and otherwise denied the motion. The 3 copies of those 12 films seized under paragraph 1 as well as the additional copies seized under paragraph 2 of the second warrant were suppressed.
Both the defendants and the People have appealed from this order. In oral argument defendants have abandoned any appeal with respect to the first warrant and the question before us is the validity of the second warrant and the search and seizure thereunder.
Defendants argue that the search by police officers exceeded the scope of the first warrant and thus the results of the search could not properly support the second warrant. They point out that the photographs and descriptions set forth in the affidavit for the second warrant were not seen until the individual film boxes were removed from the larger carton. Since the officers knew from the titles listed on the edges of the boxes in the top layer of the carton that they were not the films named in the first warrant, they were not entitled, defendants reason, to remove the film boxes from the carton and thus the evidence seized under the second warrant should be suppressed as the fruit of the poisonous tree.
We find no impropriety in the officers’ actions in removing the top layer of boxes in the larger carton even though they bore titles different from those described in the first search warrant. We know of no authority for the proposition that police officers in executing a search warrant are bound to believe that the contents of boxes match their exterior description and further, in executing the warrant, the officers were entitled to investigate what, if anything, lay beneath the top layer of boxes.
Next, defendants assert that the descriptions on the exterior of the film boxes contained in the supporting affidavit failed to support the issuance of the second search warrant. Probable cause to establish *Supp. 6 obscenity under the three-pronged test[2] established by Miller v. California (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607] can, they say, be established only by a description of the contents of the' film after viewing the same. The test of Penal Code section 311, applied as discussed in People v. Enskat (1973) 33 Cal.App.3d 900 [109 Cal.Rptr. 433] would, they maintain, demand the same evidence.
Defendants cite United States v. Tupler (9th Cir. 1977) 564 F.2d 1294 and it gives some support to their contention.[3] The instant case is, however, distinguishable from Tupler in that the affidavit upon which the second warrant was based, unlike the affidavit in Tupler, stated that it was the custom and practice of distributors of pornographic films in this area to inform prospective purchasers of the contents of each film by the material appearing outside of the film box. Additionally, the affidavit included narrative material appearing on the box where in Tupler only the label was described. Moreover, we are bound by People v. Haskin (1976) 55 Cal.App.3d 231 [127 Cal.Rptr. 426], In Haskin, as in the instant case, the supporting affidavit described the outside of the film box only. Neither the officer nor the magistrate viewed the film. In Haskin, as here, there was other corroboration in the supporting affidavit regarding the commercial practice in marketing films. The Court of Appeal in the Haskin case disposed of the contention that the contents of the film must be viewed before a valid search warrant may issue by stating at page 236:
“Defendants first contend that the magistrate issuing the search warrant should have viewed the films because, since a First Amendment right of free speech is involved, the use of ‘sensitive tools’ is called for in separating legitimate from illegitimate speech. (Speiser v. Randall (1958) 357 U.S. 513, 525 [2 L.Ed.2d 1460, 1472, 78 S.Ct. 1332].) Thus, defendants contend the magistrate issuing the warrant could not rely upon Gaida’s description of the photographs but must, personally, view the films, ascertain their content and determine if the films depict illicit sexual activity. We disagree.
*Supp. 7 “A search warrant may be issued upon probable cause (Pen. Code, § 1525), interposing a magistrate’s determination between a police officer’s and the search for and seizure of obscene matter. (Skelton v. Superior Court (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; Flack v. Municipal Court (1967) 66 Cal.2d 981, 991-992 [59 Cal.Rptr. 872, 429 P.2d 192].) In obscenity cases, evidence of community standards is not needed to show probable cause. {A day v. Superior Court (1961) 55 Cal.2d 789, 798 [13 Cal.Rptr. 415, 362 P.2d 47]; People v. Sarnblad (1972) 26 Cal.App.3d 801, 807-808 [103 Cal.Rptr. 211].) An examination of the affidavit for the search warrant convinces us there was probable cause for believing the films (and attached photographs) to be obscene and it was not necessary for the magistrate to see the films.”
The affidavit in the instant case is in an important respect stronger than the affidavit in the Haskin case. The Haskin affidavit described a picture on the outside of the box only. The affidavit in the instant case not only described the picture (presumably a frame from the motion picture) but also quoted from the outside of the box a verbal description of the contents of the film.
We conclude that there was probable cause for the issuance of the second warrant and for the seizure for evidentiary purposes of exemplars of the films described therein.
Finally, the defendants argue that the seizure of films under the second warrant was impermissibly extensive. As mentioned above, the first and third paragraphs of the second warrant authorized the seizure of three copies each of certain 8 mm. motion picture films. The second paragraph of the warrant did not limit the seizure to three copies of each listed film but instead authorized the seizure of “all additional copies” of certain of the films described in the first paragraph. Copies of these films in excess of three were seized pursuant to this paragraph of the warrant. These additional copies were not seized for evidentiary purposes but, according to the People’s brief “in the interest of conducting investigations of crimes involving child abuse . . . , preventing the sexual exploitation of the involved children . . . and deterring those items from falling into the hands of potential child molesters who could identify a child depicted in one of the films and go forward from there . . . .” They contend that the films were subject to seizure under Penal Code section 1524, subdivision (3) as property or things in the possession of a person with the intent to use them as a means of committing a public offense or under subdivision (4) of the same section as evidence which shows a felony, *Supp. 8 e.g., Penal Code section 288, has been committed. It is clear, however, that material so seized, at least material presumptively protected by the First Amendment, cannot be held indefinitely without an adversary hearing. As stated in People v. Superior Court (Loar) (1972) 28 Cal.App.3d 600, 616 [104 Cal.Rptr. 876]: “One of the due process protections surrounding the seizure of material presumptively protected by the First Amendment is the right of the owner to a prompt pretrial adversary hearing on the issue of obscenity (Marcus v. Search Warrant, supra, 361 U.S. 717), and a denial of that right requires restoration of the material to the owner. (Aday v. Municipal Court, supra, 210 Cal.App.2d 229 [26 Cal.Rptr. 576]; see People v. Aday, 226 Cal.App.2d 520, 529, 530-531 [38 Cal.Rptr. 199].)”
No adversary hearing need be held prior to the issuance of the warrant. (Roaden v. Kentucky (1973) 413 U.S. 496, 505, fn. 5 [37 L.Ed.2d 757, 765, 93 S.Ct. 2796].) Although defendants’ motion in the trial court was directed not only to the suppression of the films as evidence but also requested return of the films pursuant to Penal Code section 1540, it does not appear that an adversary hearing has ever been held as to the latter part of the motion. If defendants still desire the return of the films not needed for evidentiary purposes in connection with the instant action, they are entitled to an adversary hearing as to whether they may properly be held. In this connection we note that the seizure of films for evidentiary purposes need not be necessarily limited to one copy of each film. See Cinema Classics, Ltd. v. Busch (C.D.Cal. 1972) 339 F.Supp. 43 in which the seizure for evidentiary purposes of three copies of an allegedly obscene film was determined to be reasonable. We believe the same principle should be applied here.
Accordingly, since the films were properly seized for evidentiary purposes under the first warrant and the first and third paragraphs of the second warrant and the films were not seized for evidentiary purposes under the second paragraph of the second warrant, we reverse the trial court’s order and direct that it make a new order denying the motion to suppress evidence and, if requested by defendants, hold an adversary hearing with respect to the continued retention of additional copies of the films seized under the second paragraph of the second warrant.
Saeta, J., concurred.
Cole, P. J., did not participate in the consideration or decision of this matter.

For example, one film box bearing the title “Lollypops No. 9” was described in the affidavit as follows: “Box cover depicts a color photograph of two nude boys approximately 12-14 years old embracing each other. The title ‘Lollypops’ is printed on the box cover along with a cartoon drawing of a partially nude boy licking a lollipop. The back of the box cover depicts a cartoon drawing of a partially nude boy. The words ‘Suck this’ are printed on the box cover along with a short narrative describing the contents of the film. The narrative reads: ‘Lollypops No. 9 Doug and Courtney, 14 year old sleeping beauties on a bed, tender, young mutual J.O. scene, cocksuckin Doug’s lollypops for a great cum scene.’ ”

“(a) whether ‘the average person, applying contemporary community standards’ would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.” (Citations omitted, 413 U.S. at p. 24 [37 L.Ed.2d at p. 431].)

This case, though entitled to respect, is not binding upon us. (People v. Bradley (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457,460 P.2d 129].)